## CITY OF DALLAS et al. v. COUCHMAN et al. (No. 9002.)*

(Court of Civil Appeals of Texas. Dallas. Feb. 10, 1923. Rehearing Denied March 17, 1923.)

1. **Injunction ⚷114(3)—In suit to enjoin ordinance granting street rights to interurban railway, such railway held necessary party.**

In suit to enjoin ordinance granting street rights to interurban railway, such railway, having property rights involved, *held* a necessary party.

2. **Street railroads ⚷26(1)—City charter held not to require property owners' consent to grant of street rights to interurban railway.**

Dallas city charter *held* not to require consent of majority of property owners on street to grant of street rights to interurban railway, and, in any event, not to require such consent prior to passage of ordinance granting such rights, but at most to require such consent as a condition precedent to beginning actual work to use the street.

3. **Injunction ⚷84—Enactment of ordinance will not be enjoined unless enactment itself will work irreparable injury.**

In view of the doctrine of separation of judicial and legislative powers, the enactment of a void ordinance will not be enjoined, although its invalidity clearly appears, unless it also clearly appears that the mere enactment of the ordinance of itself will work irreparable injury without the intervention of some wrongful act under its authority.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Suit by B. C. Couchman and others against the City of Dallas and others. Judgment for plaintiffs granting an injunction, and defendants appeal. Reversed, and injunction dissolved.

James J. Collins, Allen Charlton, and Hugh S. Grady, all of Dallas, for appellants.

Clark & Clark, of Dallas, for appellees.

HAMILTON, J. This suit for an injunction was instituted by appellee Couchman and other citizens of the city of Dallas residing upon and owning real property which abuts upon Fairmount street, a residential street in said city. Westminster Presbyterian Church is a place of religious worship located upon Fairmount street, and by its trustees it intervened and joined the original plaintiffs in their efforts to obtain the injunction.

The purpose was to enjoin the city of Dallas and its board of commissioners from "tak-

ing any action whatever or doing anything whatever" to put into effect an ordinance in process of enactment by which a franchise was to be granted Texas Interurban Railway, authorizing it to construct, maintain, and operate in certain streets of Dallas, including Fairmount street, an interurban electric railway extending from Dallas to Denton, Tex.

The street was alleged to be an old one, and a first-class residential street on which the plaintiffs' (appellees') homes were and had been situated many years, and it was alleged that the proposed use of the street by an interurban railway would greatly damage and practically destroy the value of it as a residential thoroughfare. It was alleged that article 2 of Dallas city charter, relating to such franchises, does not empower the city commission to grant such franchises in the manner pursued, but that, on the contrary, the power to grant the franchise is circumscribed by the requirements and provisions of certain portions of the charter, which, as a limitation and precedent, require first obtaining the written consent of the owners of the greater part of the front footage of property abutting on the street or alley to be occupied, and require that such written consent must first have been filed with the board of commissioners before the process of enacting the ordinance is begun. It was alleged that such consent of owners had not been obtained.

The following provisions of the city charter of Dallas relating to the allegations immediately above set out were pleaded: Subdivisions 7, 8, 17, and 24 of section 8 article 2. They will be particularly discussed in another connection, and no further notice of them is required in stating the allegations.

It was alleged that a different route through the city over other streets is available for the interurban line, which alternate route would be cheaper and more feasible, and the adoption of which would obviate the injuries and damages to appellees which were alleged. This route was particularly described.

Appellees by specific allegations base their right to a decree upon the following grounds: (1) That the injunction should be granted because appellants are without authority to grant a franchise until after a majority of the abutting property owners on the street have consented and their written consent is filed as required in subdivision 24 of section 8, article 1, of the charter; (2) that it was proper to grant the injunction because appellants are expressly inhibited from enacting an ordinance granting the franchise to the Texas Interurban Railway, and thereby greatly damaging and injuring appellees' property, situated on Fairmount street, against their consent and without making adequate compensation to them for the injury and damage to result from the building of double tracks and operating interurban cars over the street. In this connection it is alleged that the inhibition contained in sections 17 and 19 of article 1 of the Constitution of Texas, and of section 1, article 14, of the Constitution of the United States, would be violated by the enactment of the ordinance, and that an injunction is a recognized remedy to prevent such infractions; (3) it is alleged that Fairmount street is only 33 feet wide, excluding the sidewalks, and that a double-track railway line thereon, such as is to be authorized by the ordinance, would practically take the street and destroy its usefulness, and irreparably damage the property and homes of the appellees located thereon; (4) that the injunction ought to be granted because the double-track railway on Fairmount street would create a dangerous crossing, amounting to a deathtrap in the midst of appellees' homes, and would thereby be a needless creation of an extremely dangerous interurban railway crossing; (5) that the injunction should be granted because Westminster Presbyterian Church is so situated on the street; that if the franchise were put into effect, and interurban cars were operated along the street, the effect would be greatly to inconvenience and discomfort and disturb the congregation and members of the church, and seriously to disturb and interfere with the services, with the result that the property would be rendered undesirable and unfit for church purposes. In the same connection it was alleged that, on account of the width of the street being only 33 feet, a double-track interurban railway passing along in front of the church would prevent the use of the street by members of the church upon which to park their automobiles, as is their custom. It was alleged that the church was located on this street for the purpose of avoiding disturbances and confusions incident to streets of the city which carry heavy traffic, and especially those subjected to use by street railways.

The petition, duly verified, was presented to the judge of the trial court, and a temporary injunction was thereupon granted, and notice was given appellant to appear to show cause, if any, why it should be dissolved.

To the petition appellants answered by filing various special exceptions, and by denying in more or less detail the allegations, and prayed the court to dissolve and deny the temporary writ of injunction.

The first exception was to the effect that Texas Interurban Railway was disclosed by the allegations of the petition to be a necessary and proper party to the suit, and that by reason of its being an indispensable party, no injunction could properly issue in this cause of action, which was being prosecuted

solely against the city of Dallas and its board of commissioners.

Appellants specially excepted to the petition because it discloses that the injunction is sought as a means of interfering with the legislative power reposed by law in the board of commissioners. An exception was interposed, to the effect that it appeared affirmatively from the petition that appellees have an adequate and efficient remedy at law, and also because it was not affirmatively alleged that the front footage of the property on Fairmount street represented by the petitioners constituted a majority of the front feet of the entire distance covered by the proposed interurban route as required by the charter, and because the petition failed to reveal the entire front footage of property on the route, and what part thereof the petitioners represented. Other exceptions are regarded as unimportant, and will not be mentioned.

It was denied on behalf of appellants that the ordinance had been finally passed, and it was specially denied that the franchise is now in effect or that appellants had finally determined their legislation in regard to the franchise.

Appellants pleaded that a franchise was granted to C. W. Hobson and others in January, 1917, to construct and operate a street railway system in Dallas; that such street railway is now being operated by the successors of the said Hobson, to wit, the Dallas Railway Company; that, as a part of the consideration for the granting of such street railway franchise, Hobson entered into an agreement with appellants to build and construct two interurban railways from some outside points into the city of Dallas, a distance of not less than 30 miles each; that pursuant to this agreement, Hobson and the Texas Interurban Railway, his successor, have constructed one interurban railway, known as the first interurban, and are now in process of constructing the second; that the first interurban railway is known as the Terrell Interurban, which is now practically completed and will be in operation within a short time; that the second is known as the Denton Interurban Railway, which is in process of construction; that this second interurban railway proposes to use the track of the Missouri, Kansas & Texas Railway Company for a large portion of the distance in entering the town of Denton; that a contract exists, and has been approved by the city of Dallas, between the Texas Interurban Railway and the Missouri, Kansas & Texas Railway Company, for the use of the latter's tracks by the interurban; that as a part of the agreement made in January, 1917, it was agreed that an ordinance should be granted, giving to the interurban railway an entrance into the city of Dallas; that a form of ordinance was duly approved at that time; that the granting of the franchise to C. W. Hobson to operate a street railway was duly approved by the public at an election held for that purpose; that by the terms of the agreement it was understood that an entrance should be given to each of the interurban railways into the city of Dallas: that in compliance with the agreement the interurban railway is ready to begin the construction of its entrance into the city of Dallas; that pursuant to the prosecution of this construction the board of commissioners of the city of Dallas is now deliberating upon granting a franchise and selecting a proper route over which the interurban railway may enter the city of Dallas. A description of the route to be contained in the proposed franchise is described, and it is repeated that the board of commissioners, after hearing fully and fairly the protest of the appellees, are deliberating upon their complaints, and are ready to hear all other complaints before the final passage of the ordinance.

It was alleged that the city of Dallas in granting such franchise is controlled by subdivision 4 of section 8, article 2, of its charter, which authorizes it to grant franchises over public streets, provided it is done by an ordinance which shall not be finally passed until its third and final reading, the three readings to be at separate regular meetings of the board of commissioners; the last to be at a time not less than 30 days from the first. And it was alleged that no ordinance granting a franchise could become an enactment until a majority of the board of commissioners had voted for its passage at such three regular meetings, and not until 60 days after its adoption on the third and final reading, and not within such period of 60 days if within that time, after the third and final vote to enact it, a petition to the board of commissioners, signed by 500 of the bona fide qualified voters of the city of Dallas, should be submitted, requesting that the question of the granting of such franchise should be passed upon by a vote of the qualified voters of the city of Dallas at the next succeeding general election to be held after notice has been published for a period of 20 days.

It was alleged that the ordinance had been submitted and passed by a majority of the board of commissioners upon its first and second readings, and that no further steps had been taken with regard to the final passage of the ordinance, and that the 30 days required by the charter had not elapsed since the first reading of the ordinance, so that the board of commissioners had not concluded its deliberations thereon, or enacted the ordinance so as to bring into action the right of the electorate upon the petition of the specified number of qualified voters to pass upon the granting of the franchise at an election held for that purpose.

It was denied that the board of commis-

sioners proposed to grant unlawfully any franchise or in any manner to interfere with the lawful rights of the appellees in the enjoyment of their property. It was further alleged that the charter gives to the city of Dallas exclusive control of its streets, and that the street in question is one of such streets within the city of Dallas, and is under the exclusive control of the board of commissioners, and that the granting of public franchises over such streets, and particularly the granting of the franchise involved in this suit, is reposed entirely and exclusively with the board of commissioners for the exercise of their judgment and discretion.

It was alleged that the type of car to be used and operated upon the proposed line of interurban railway would be of a size and weight similar to the cars that are generally operated by the street railway system of the city, and commonly known as double-truck cars. And it was alleged that the interurban railway had obligated itself to carry local passengers from points inside the city— all of which provisions are alleged to be in the ordinance, which is attached and made a part of the pleading.

It was alleged that when the railway is constructed on Fairmount street it will constitute no additional burden on the street, but will be operated in a manner wholly consistent with the original dedication and use of the street. It was specially alleged that the use of the street by the interurban railway lines would not interfere with the reasonable convenience of any of the property owners along the street, as shown by the experience of other residents of the city living on streets through which street car lines are operated.

It was specially pleaded that subdivision 24 of section 8, article 2, of the city charter, pleaded by appellees as requiring the consent of property owners to be obtained and filed with the city commission before the enactment by the board of commissioners of an ordinance authorizing street railways or other railways to construct their lines on such streets, has no controlling application, because appellees do not reveal and have not shown that they constitute the owners of a majority of the front feet of property abutting upon the street covering the entire distance to be occupied by the interurban railway.

It was alleged that by virtue of subdivision 17, section 8, article 2, of the city charter, it is expressly provided that the granting of charters for interurban railways shall not be controlled by charter provisions relating generally to public utilities entirely within the city and its suburbs, and that by reason of the provisions of this portion of the charter relating to interurban railways the consent of property owners along a street need not be obtained as a requisite for the granting of a franchise to an interurban to operate through such street, but that the granting of such franchises to interurban railways is exclusively within the jurisdiction and control of the city commissioners without regard to the consent of abutting property owners. An exhibit was attached to and made a part of the answer, which disclosed that the purpose of the ordinance was to grant a franchise to the Texas Interurban Railway and its successors, giving them the right and privilege to construct, maintain, and operate a single-track or double-track interurban railway in and across certain streets of the city, including Fairmount street.

This answer was duly sworn to on behalf of appellants. Evidence was adduced in its behalf from W. J. Powell, chief engineer of the supervisors of public utilities of the city of Dallas, who testified that the front footage of the property along the total length of the proposed interurban route within the city limits is 24,836 feet, and that the total frontage of the property represented by the appellees in this case on Fairmount street, from Wolfe street to McKinney avenue is 3,369 feet. He described the cars which would be operated on the line to be similar, according to his understanding, to certain one-man street cars now in use in the city of Dallas, and stated that the interurban cars would have a seating capacity of 52 persons. He testified that they would weigh about 30,000 pounds each, and are lighter than the double-truck cars now in use by the street railway company on certain lines in the city, which latter cars of the double-truck variety used by the Dallas Street Railway Company in the city, he testified, would weigh about 40,000 pounds each. Appellees rested their right to the injunction exclusively upon their sworn petition and appellants relied upon their sworn answer and the evidence given by Powell.

[1] The first exception to appellees' petition noted above seems to us to be meritorious, although it is not insisted upon by appellants upon this appeal, but seems to have been abandoned by them. Appellees disclose by their allegations that the granting of the franchise described in the ordinance which the board of commissioners proposed to enact is already a matter of agreement between appellants and the interurban railway. The ordinance itself discloses a definite consideration moving to the city of Dallas from the interurban railway for the franchise to be obtained through the enactment of the ordinance. It appears from the petition, as well as from the answer interposed by appellants, that the interurban railway's predecessors are already bound to the city of Dallas to construct and operate two interurban lines into the city of Dallas, and that the line which it is proposed shall be constructed along Fairmount street is to be

built and operated in discharge of this obligation. It, therefore, seems to us that, notwithstanding the fact that this is altogether a suit in equity to enjoin an act threatened by the city of Dallas, and to prevent certain injuries it is alleged will flow from the commission of such act, yet it is nevertheless a suit in which the pleadings disclose that the interurban railway has such property rights and interests in the litigation as to render it a necessary party to the suit. Dallas Levee District No. 3 v. Sam Ayers, 246 S. W. 1112 (recently decided by this court, but not yet [officially] published); King v. Commissioners' Court, 10 Tex. Civ. App. 114, 30 S. W. 257.

[2] Unless the ordinance were invalid because of its being ultra vires and clearly transcending charter authority, then, as a matter of course, no judicial restraint can be invoked. This is virtually conceded by appellees. The contentions and propositions advanced by both parties are rested primarily upon the premise that the ordinance, if finally enacted, would be a void enactment. We think, however, the ordinance, when tested by charter provisions which prescribe and govern the power and procedure of the board of commissioners with reference to the subject-matter involved, is clearly authorized and altogether valid.

The charter gives the board of commissioners the right and power to grant to interurban railways franchises without imposing the condition and limitation that the consent, written or otherwise, of owners of property along the street the line is to traverse must be obtained. The ownership, right of control, and use of the streets, as well as of all other real property and public places, is expressly given to the city by the charter, upon which all of its authority is based. Section 8, article 2, Charter City of Dallas. It is provided that the city shall have the power by ordinance to grant any franchise or right to public utilities mentioned in that instrument. The ordinance by which such franchise or right is to be granted is required by the charter to be read and acted upon by the board of commissioners at three separate regular meetings the last of which is to be separated from the first by a period of not less than 30 days. A majority vote of the board of commissioners is required for such enactment. The ordinance then cannot take effect until 60 days after its adoption on the third and final reading, and not then if, in the meantime, a petition is presented to the board of commissioners, signed by 500 qualified voters of the city in opposition to it. In such case it is required that the action of the board of commissioners in passing the ordinance shall be suspended, and the question of granting the franchise shall be submitted to a vote of the qualified voters of the city at the next succeeding general election, preceding which election a notice shall be published in a daily newspaper within the city of Dallas for a period of 20 successive days. Subdivision 4, section 8, article 2, Charter City of Dallas.

By the terms of subdivision 24, section 8, article 2, of the charter it is provided as follows:

"No street or other railway shall be authorized by the board of commissioners to lay tracks on or occupy the streets or alleys of the city until the owners of a majority of the front feet of property abutting on said streets or alleys so as to be occupied have, in writing, consented thereto and said consents have been filed with said board; provided, the entire distance of such proposed line of railway shall be considered in determining whether the owners of a majority of the front feet abutting property have consented thereto, and the majority here required shall be a majority of the front feet of the entire distance of such continuous line, whether occupying one or more streets or alleys; and provided further, that after the consent of any property owner shall be given in writing as herein provided for, he shall not be entitled to withdraw the same within twelve months after giving such consent, nor shall he be entitled to withdraw it thereafter if within such period the applicant for the easement shall file with the city the consents of enough property owners interested to authorize the board of commissioners to grant such easement."

Appellees contend that this charter provision mandatorily inhibits the enactment of an ordinance by the city of Dallas granting to the interurban railway a franchise on Fairmount street until after the owners of a majority of front feet of property abutting thereon have consented in writing to the granting of the franchise, and the written consent has been filed with the board of commissioners. To this position we cannot accede, for the reason that subdivision 17, section 8, article 2, of the charter constitutes an exception which, we think, eliminates the limitations of subdivision 24 imposed upon the right of the board of commissioners to authorize railways to lay tracks, etc., in the streets. That limitation is, as is to be noted, that the board of commissioners cannot authorize a street or other railway to lay tracks on or occupy streets or alleys of the city until the owners of the majority of the front feet of the abutting property along the entire distance of the continuous line shall have filed their written consent.

Subsection 17, section 8, article 2, of the charter is as follows:

"The terms of this charter concerning the granting of franchises to persons or corporations for the purpose of rendering any public service wholly within the city and its suburbs shall not apply to interurban railways, except as specified in the four preceding sections and in the various sections providing for the referendum."

The four preceding sections referred to in this section are subdivisions 13, 14, 15, and 16 of section 8, article 2. Subdivision 13 defines interurban railways. Subdivision 14 provides that the board of commissioners shall have the power, "subject to the terms and conditions contained in this charter," to grant the right to construct and operate interurban lines over the streets and other property of the city for a period not exceeding 20 years. Subdivision 15 provides that the right mentioned in subsection 14 shall be granted by ordinance only, which shall become effective after three separate readings, the last reading to be not less than 30 days from the first. It also provides that the granting or refusing of the right of franchise mentioned therein shall be subject to charter provisions concerning the submission of general franchises to an election. Subdivision 16 provides, in general outline, for conditions to be contained in such grants.

Since these parts of the charter do not require that the majority of owners of abutting property shall consent in writing to the construction of the railway, and since those provisions of the charter relating to the referendum do not require it, subsection 17 of section 8, article 2, above set out, frees the board of commissioners of the restraint contended for, to the effect that it can enact the franchise ordinance only after the written consent of those who own the abutting property is filed. The fact that subsection 24 is subsequent to subsection 17 does not alter the effect of subsection 17. Subsection 24 imposes limitations generally upon the right of the board of commissioners to authorize the extension of street and other railway lines through streets, etc., whereas, subsection 17 specifically provides that no terms of the charter except those therein named shall apply to granting franchises to interurbans. Subsection 14, as above indicated, gives the board of commissioners power to grant the right to lay tracks and to operate cars of interurban railways over the streets, "subject to the terms and conditions of this charter." The above-quoted phrase does not mean subject to every requirement and prohibition which can be found in the charter, but subject only to material, applicable provisions not excluded by subsection 17. Subsection 15 provides, as already said, that the right to construct interurban tracks in streets shall be granted by ordinance only, prescribes how the ordinance shall be enacted, and makes its binding force subject only to the provisions of the charter for a referendum. Subsections 13 and 16 have no bearing whatever either way upon the question of the right to authorize the laying of the track without property owners' written consent.

In the light of the foregoing, we think the effect of the specific provisions of subsection 17 upon subsection 24 is to qualify the latter and render its significance to be "no street or other railway except interurban railways shall be authorized," etc.

[3] But, departing from this construction of railway charter provisions in pari materia and assuming for the moment, as the parties in their respective arguments have done, that the proceeding complained of is so irregular, because of the absence of property owners' written consent and because of other objections, as to render it invalid, the same conclusion as to the right to enjoin the passing of the ordinance seems to us to be inescapable.

As before stated, the record clearly establishes that the ordinance has not been finally enacted, and that it is still pending before the board of commissioners, to be finally considered and acted upon. The decree of the court, therefore, enjoins a legislative act of the board of commissioners. It is well settled by the authorities in this state that a court of equity will not lend its processes to the accomplishment of this character of interference by injunction with the legislative functions of a municipal corporation; the corporation being endowed with such functions by special legislative authority. The rule is that the enactment of a void ordinance will not be enjoined, although its invalidity clearly appears, unless it also clearly appears that the mere enactment of the ordinance of itself will work irreparable injury without the intervention of some wrongful act under its authority. The enactment of an ordinance by the legislative body of a city is a sovereign act of government. It is the exercise of duly conferred legislative authority. It is an expression of the will of the Legislature through the instrumentality of the board of commissioners, upon which the Legislature has chosen to confer a part of the governmental power reposed in it. Since our system of government is divided into the legislative, executive, and judicial departments, whose spheres are clearly defined, no one of them, and least of all the judicial department, should attempt to exceed the limits set about it and invade by such interference the domain of another. The mere enactment of an ordinance of the nature of that under consideration could not operate to impair any of the rights of appellees. If it were void, that fact alone would work no injury. Only after acts were impending or steps were already taken to construct the tracks could the basis for the relief here sought exist. When such exigency arose, then, and not before, in any event, could the authority of a court be invoked to restrain the injury. City of Dallas v. Dallas Con. Selc. Ry., 105 Tex. 337, 148 S. W. 292; Garitty v. Halbert (Tex. Civ. App.) 225 S. W. 196.

We are not in accord with the view advanced in behalf of appellees to the effect

that there is no distinction between municipal corporations and other corporations with respect to the power of courts over their proceedings. However lowly their position in matters pertaining to government may be in the esteem of some courts in other jurisdictions, whose decisions are cited with approval on behalf of appellees, the fact remains that they are endowed with important governmental functions, which more intimately affect their inhabitants in the ordinary concerns of life than probably any other governmental agency does. Being lawfully clothed with legislative power, they must be left in the exercise of that power to the enactment of ordinances according to the dictates of their legislative judgment, regardless of whether or not any particular enactment may be valid or invalid. Especially in such instances as where the enactment of their invalid ordinances of itself does not work an irreparable injury without the intervention of some act done under or by virtue of it.

The intervener is in the same position in the suit as that occupied by the original plaintiffs. Its officers and trustees, for the purpose of escaping the disturbances incident to worship on a noisy street in another portion of the city, abandoned their church there, and established its location on Fairmount street in quest of quietude and seclusion from the annoyances which formerly disturbed their worship. But the fact remains that in locating their church upon Fairmount street they acted with knowledge that the original dedication of the street for street purposes was entirely consistent with its being subjected to the very use which the act complained about in this case is designed to impose upon it. At least such knowledge must be imputed to them. While the construction of the interurban line on Fairmount street may subject the members of the church to hardships and annoyances, this is but an unfortunate incident to the lawful exercise of control over the street which inheres in the city of Dallas, and the rule of law which sustains that power of the city must prevail, notwithstanding such results. The severity of the law cannot be relaxed in consideration of the particular nature of the injury recited in behalf of the appellee.

We are of the opinion that, conceding the power of the board of commissioners to authorize the laying of the interurban track and the operation of cars thereon along the proposed route to be subject to the obtaining and filing with the board of commissioners the written consent of the owners of a majority of the front footage of property, still the petition is insufficient because it does not allege that such consent has not been obtained, and cannot be obtained, as to the entire route. The charter provision is, not that authority to extend the line through any particular street shall not be granted until the owners of a majority of the front footage on such street have consented in writing, but only that the authority shall not be granted until the owners of a majority of the front footage along the entire route has been obtained and filed with the board of commissioners. The charter, as we construe it, does not require that such consent shall be had in writing and filed before the ordinance is enacted in those instances where such consent is required at all. The provision is that—

"No street or other railway shall be authorized by the board of commissioners to lay tracks on or occupy the streets, etc., * * * until the owners of a majority of the front feet of property abutting on said street * * * have in writing consented thereto and said consents have been filed with said board; * * * and provided further, that after the consent of any property owner shall be given in writing as herein provided for, he shall not be entitled to withdraw the same within twelve months after giving such consent, nor shall he be entitled to, withdraw it thereafter if within such period the applicant for the easement shall file with the city the consents of enough property owners interested to authorize the board of commissioners to grant such easement."

This provision does not require that the consent shall be obtained and filed before the ordinance is passed. In a case where this charter provision applies it would be immaterial whether or not the ordinance were enacted and thereafter the required consent obtained, or the required consent first obtained and thereafter the ordinance enacted. The only essential thing would be that both stipulations were complied with, without regard to the order in which this might be done before the work is begun. The strict rule of pleading in injunction suits requires, not only clear and full allegations descriptive of the wrongful conduct complained about, but every fact which would justify the conduct must be negatived also.

The injunction should have been dissolved, and the complainants remitted to the pursuit of whatever remedy at law they are entitled to invoke.

The judgment is reversed, and the injunction is dissolved.

### On Motion for Rehearing.

A re-examination of appellees' petition in the light of the motion for rehearing has led us to the conclusion that the petition should be held sufficient to allege that appellant had not obtained the writted consent of the owners of a majority of the front footage of property, and could not obtain such consent as to the entire route of the proposed line of railway through the streets of the city of Dallas. We conclude that sections 5, 6, and 8 contain allegations sufficient to meet the requirements in this respect, although

there are no allegations in the petition which can be said specifically, distinctly, and definitely to set forth that the city of Dallas has not obtained, and cannot obtain, the written consent of such majority of owners of the front footage of property along the whole way the proposed trackage is to traverse.

Modifying the opinion in this respect so as to hold that the petition is sufficient as an allegation of appellees' failure to obtain such consents does not affect the disposition made of the case by this court.

The motion for rehearing is overruled.