## In re SPIRITAS RANCH ENTERPRISES, L.L.P., Relator.

### No. 2–06–463–CV.

Court of Appeals of Texas, Fort Worth.

March 22, 2007.

888 ■ ■

Winstead Sechrest & Minick, P.C., David F. Johnson, Fort Worth, Arthur J. Anderson, Dallas, for Petitioner.

Brown & Hofmeister, L.L.P., Robert F. Brown, Edwin P. Voss, Jr., Richardson, for Real Party in Interest.

PANEL B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION ON REHEARING

TERRIE LIVINGSTON, Justice.

### Introduction

After reconsidering our prior opinion on the Town of Little Elm's motion for rehearing, we deny the motion, but we withdraw our opinion and judgment of February 22, 2007 and substitute the following in their place.

This original proceeding concerns the Town of Little Elm's proposed annexation of property owned by relator Spiritas Ranch Enterprises, L.L.P. The main issue is whether the trial court should have issued a temporary restraining order (TRO) prohibiting the Town from annexing or taking steps to annex Spiritas's property until after Spiritas had been given the opportunity to arbitrate whether the property could be annexed without inclusion in the Town's three-year annexation plan. For the reasons set forth below, having considered all of the filings from both parties,[1] we determine that Spiritas is entitled to mandamus relief.

### Background Facts

In late September 2006, the Town began the process of annexing approximately 1,103 acres of nonresidential properties located within its extraterritorial jurisdiction[2] along State Highway 380 pursuant to

---

1. We grant Spiritas's motion for leave to extend the page limitation on its reply brief and the Town's motion for leave to file a supplemental response. Consequently, we deny Spiritas's motion to strike the Town's supplemental response.

2. Section 42.021 of the local government code provides that

   [t]he extraterritorial jurisdiction of a municipality is the unincorporated area that is contiguous to the corporate boundaries of the municipality and that is located:

   (1) within one-half mile of those boundaries, in the case of a municipality with fewer than 5,000 inhabitants;

   (2) within one mile of those boundaries, in the case of a municipality with 5,000 to 24,999 inhabitants;

   (3) within two miles of those boundaries, in the case of a municipality with 25,000 to 49,999 inhabitants;

   (4) within 3 ½ miles of those boundaries, in the case of a municipality with 50,000 to 99,999 inhabitants; or

   (5) within five miles of those boundaries, in the case of a municipality with 100,000 or more inhabitants.

   TEX. LOC. GOV'T CODE ANN. § 42.021 (Vernon 1999).

section 43.052(h)(1) of the local government code, which allows largely undeveloped property to be annexed without inclusion in the Town's three-year annexation plan.[3] TEX. LOC. GOV'T CODE ANN. § 43.052(h)(1) (Vernon Supp.2006). Spiritas owns multiple tracts[4] included within this proposed fast-track annexation.[5] In October 2006, in accordance with the statutorily-required annexation process applicable to fast-track annexations, the Town sent written notice to landowners of its intent to annex their properties. *See id.* § 43.062. Between November 1 and November 10, 2006, it posted public hearing notices in accordance with the statute. *Id.* § 43.063.

On November 6, 2006, Spiritas sent a letter to the Town asking that its property be included in the Town's three-year annexation plan rather than being annexed according to the fast-track procedures. The Town Council held public hearings on the fast-track annexation ordinance on November 21, 2006,[6] but it did not vote on Spiritas's request at that time because there was not enough time to place it on the agenda. At a subsequent meeting on December 5, 2006, the Town Council voted not to include Spiritas's land in the three-year annexation plan and instead to proceed with the fast-track annexation of Spiritas's property. Accordingly, on December 6, 2006, Spiritas requested that the Town arbitrate the issue under section 43.052(i) of the local government code. *Id.* § 43.052(i). In a December 7, 2006 letter to Spiritas, the Town's attorney confirmed

that the Council would consider whether to arbitrate at a meeting scheduled for December 19, 2006.

The agenda for the December 19 Council meeting was published on Friday, December 15, 2006. Item 11.e. was titled, *"Discussion and consideration to adopt Ordinances No. 809* an Ordinance of the Town of Little Elm, Texas annexing territory described in Exhibit A attached hereto to the Town, and extending the boundary limits of the Town so as to include the said property within the corporation limits of the Town. . . ." Item 12 read as follows:

> *The Town Council will hold a Closed (executive) session meeting* pursuant to the provisions of Chapter 551, Texas Government Code, . . . in accordance with the authority contained in:

> **Section 551.071** Consultation with Town Attorney to receive legal advice concerning Spiritas Ranch Enterprises L.L.P. request for arbitration petition regarding the Little Elm U.S. 380 annexation, and contemplated litigation.

> > *Discussion and consideration* to take any action necessary as the result of the Closed (executive) session:

> **Section 551.071** Consultation with Town Attorney to receive legal [advice] concerning Spirit[a]s Ranch Enterprises L.L.P. request for arbitration petition regarding the Little Elm

3. For ease of reference, we will refer to annexation under section 43.052(h)(1), i.e., annexation of an "area contain[ing] fewer than 100 separate tracts of land on which one or more residential dwellings are located on each tract" without inclusion in a municipality's three-year annexation plan, as "fast-track annexation." *Id.* § 43.052(h)(1).

4. The tracts are separated from the current territorial limits of the Town by Lake Lewisville and are also located several traveling miles from the Town's current emergency facilities.

5. These properties are not included in the Town's three-year annexation plan.

6. *See id.* § 43.0561(a).

U.S. 380 annexation, and contemplated litigations.

The last page of the agenda contains a notation that "[p]ursuant to the Texas Open Meeting Act ..., one or more of the above items may be considered in executive closed session to the public. Any decision on any item will be taken or conducted in open session following the conclusion of the executive closed session." Accordingly, the agenda appeared to allow the Council to vote on whether Spiritas's property should be annexed *before* considering Spiritas's request to arbitrate the matter.

On Monday, December 18, 2006, Spiritas filed suit against the Town, asking for a declaratory judgment and a temporary and permanent injunction. More specifically, Spiritas asked the trial court to enjoin the Town from taking any action to directly or indirectly annex the property according to the fast-track annexation procedures until arbitration is completed under sections 43.052(i), 43.0565, and 43.0564 of the local government code. *Id.* §§ 43.052(i), .0565, .0564. Spiritas also filed an application for a TRO, asking the trial court to issue a TRO restraining the Town from directly or indirectly taking any steps to annex the property before notice could be given and a hearing held on Spiritas's temporary injunction request. That same day, the Town filed a response, the trial court held a hearing at which it heard argument from both parties, and the trial court denied the TRO application. Because the Town Council meeting was to occur at 7:00 p.m. the next day, Spiritas did not have enough time to schedule a hearing on its request for temporary injunctive relief. *See* TEX.R. CIV. P. 21 (requiring at least three days' notice of hearing unless shortened by trial court); *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 229 (Tex. 2004) (noting rule 21's three-day notice period).

On December 19, 2006, Spiritas filed a petition for writ of mandamus, asking this court to compel the trial court to reverse its order denying the TRO and order the trial court to enter a TRO "maintaining the status quo" and "precluding [the Town] ... from taking any action to annex the [p]roperty until the trial court can determine the merits of Spiritas's temporary injunction request." Spiritas also requested that this court issue temporary emergency relief prohibiting the Town from taking any action to annex the property while Spiritas's petition was pending. After reviewing Spiritas's motion, petition, and a faxed response from the Town, we issued an order granting Spiritas's motion for emergency temporary relief.

In accordance with our order, the Town Council did not vote on the proposed fast-track annexation ordinance at the December 19 meeting. However, the Town did vote to arbitrate the dispute with Spiritas. On December 22, 2006, we received an Agreed Motion for Reciprocal Temporary Injunctive Relief in which the parties informed this court of an issue that had not yet been presented to this court or the trial court: that Spiritas had submitted two preliminary plat applications to the Town regarding the property included in the proposed fast-track annexation. Accordingly, the parties agreed that while this court's stay was in effect, not only would the Town be prohibited from taking any action to annex the property, but Spiritas would refrain from submitting any permit applications, except for the two pending preliminary plat applications, with respect to the property and from asserting any rights under section 43.002(a) of the local government code with respect to the two pending applications. TEX. LOC. GOV'T CODE ANN. § 43.002(a).

Because it was unclear whether the parties' agreement was intended to encompass

the temporary injunctive relief requested by Spiritas in its original petition in the trial court, and because the issue had not been ruled upon by the trial court, we abated this original proceeding for the trial court to enter an order based on the parties' agreement. When we received a copy of the agreed order entered by the trial court,[7] and subsequent correspondence from the parties related to other motions pending in this court, it became clear that the injunctive relief agreed to by the parties was applicable only during the pendency of this court's December 19 stay order and did not encompass the temporary injunctive relief requested by Spiritas in the trial court. Accordingly, it is necessary for us to address Spiritas's two issues: (1) whether the trial court abused its discretion by denying Spiritas's application for a TRO enjoining the Town from attempting to annex the property until an evidentiary hearing could be held on Spiritas's request for a temporary injunction and (2) whether Spiritas has an adequate remedy by appeal.[8]

In its response to Spiritas's petition for writ of mandamus, the Town contends that this court lacks jurisdiction over this original proceeding and that Spiritas lacks standing to bring it. Because an analysis of the jurisdictional and standing issues necessarily includes a discussion of the merits of Spiritas's complaint—and because we conclude that we have jurisdiction and that Spiritas has standing—we will review those typically threshold issues after we have reviewed the merits of Spiritas's complaint.

## Standard of Review

■ Mandamus relief is proper only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex.2004) (orig. proceeding).

■ A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). With respect to the resolution of factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court unless the relator establishes that the trial court could reasonably have reached only one decision and that the trial court's decision is arbitrary and unreasonable. *Id.* at 839–40. This burden is a heavy one. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex.2003) (orig. proceeding). Our review is much less deferential with respect to a trial court's determination of the legal principles controlling its ruling because a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker*, 827 S.W.2d at 840. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in mandamus. *Id.*

■ Absent extraordinary circumstances, mandamus will not issue unless relator lacks an adequate remedy by appeal. *In re Van Waters & Rogers, Inc.,*

---

**7.** Spiritas's agreed motion to supplement the record with a copy of this order is granted.

**8.** We note that this proceeding has been pending for three months and that the parties agreed temporary injunctive relief has been in effect since January 5, 2007. Had the parties instead agreed to the relief requested by Spiri-

tas—a TRO pending an evidentiary hearing on Spiritas's request for temporary injunctive relief—the longest that agreed relief would have been effective without the Town's consent or good cause shown would have been fourteen days. *See* Tex.R. Civ. P. 680.

145 S.W.3d 203, 210–11 (Tex.2004) (citing *Walker,* 827 S.W.2d at 839). Determining whether an appeal is an adequate remedy requires the careful balance of jurisprudential considerations. *Prudential Ins. Co.,* 148 S.W.3d at 135–36. An appellate remedy is adequate when any benefits to mandamus review are outweighed by the detriments. *Id.* When the benefits outweigh the detriments, we must conduct further analysis. *Id.* Whether an appellate remedy is adequate so as to preclude mandamus review depends heavily on the circumstances presented. *Id.* at 137. An appeal is inadequate for mandamus purposes when parties are in danger of permanently losing substantial rights, such as when the appellate court would not be able to cure the error, the party's ability to present a viable claim or defense is vitiated, or the error cannot be made part of the appellate record. *Van Waters & Rogers,* 145 S.W.3d at 210–11; *Walker,* 827 S.W.2d at 843–44.

### Applicable Law

■■■■ The purpose of a TRO is to preserve the status quo, which the supreme court has defined as "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton,* 146 S.W.3d 648, 651 (Tex.2004) (orig. proceeding) (quoting *Janus Films, Inc. v. City of Fort Worth,* 163 Tex. 616, 358 S.W.2d 589, 589 (1962)). A TRO restrains a party from acting only during the pendency of a motion for temporary injunction, i.e., until a full evidentiary hearing on the motion occurs. *Del Valle ISD v. Lopez,* 845 S.W.2d 808, 809 (Tex.1992); *see* TEX.R. CIV. P. 680. A TRO may not be granted without notice to the adverse party unless it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon. TEX.R. CIV. P. 680.

Section 43.052(c) of the local government code requires a municipality to create and make known to the public a formal three-year annexation plan. TEX. LOC. GOV'T CODE ANN. § 43.052(c); *JNC Partners Denton LLC v. City of Denton,* 190 S.W.3d 790, 792 (Tex.App.-Fort Worth 2006, pet. filed). The plan gives three years' advance notice of the municipality's intention to annex to persons whose land is described in the plan. TEX. LOC. GOV'T CODE ANN. § 43.052(c); *JNC Partners Denton LLC,* 190 S.W.3d at 792. An exception to this rule, section 43.052(h)(1),[9] provides that a municipality is not required to include sparsely populated and predominately unimproved land in its three-year plan. TEX. LOC. GOV'T CODE ANN. § 43.052(h)(1); *JNC Partners Denton LLC,* 190 S.W.3d at 792. Further, when proceeding under this fast-track method, the municipality may annex the land as directed by sections 43.061–.065, which require substantially shorter notice than three years. TEX. LOC. GOV'T CODE ANN. §§ 43.052(h)(1) (providing that annexation outside a three-year plan is permitted if the area contains "fewer than 100 separate tracts of land on which one or more residential dwellings are located on each tract"), 43.061–.065 (requiring advance notice of intention to annex of only thirty days and completion of annexation within ninety days). When a landowner is notified that a municipality intends to annex the landowner's property under section 43.052(h)(1)'s fast-track annexation procedures and believes the pro-

---

**9.** Section 43.052(h) provides nine exceptions to the requirement of inclusion of property in a three-year annexation plan; if no exception is applicable to a particular property, then, procedurally, it must be included in a municipality's three-year plan before it is annexed. TEX. LOC. GOV'T CODE ANN. § 43.052(h).

cedure to be in violation of section 43.052(c), the landowner may petition the municipality under section 43.052(i) for inclusion of the land in the three-year annexation plan so that fast-track annexation of that land would be unavailable to the municipality. *Id.* § 43.052(i); *JNC Partners Denton LLC,* 190 S.W.3d at 792. If the municipality "fails to take action on the petition," the statute provides that the landowner may request arbitration. Tex. Loc. Gov't Code Ann. § 43.052(i); *JNC Partners Denton LLC,* 190 S.W.3d at 792. The full text of section 43.052(i) provides as follows:

> A municipality may not circumvent the requirements of this section [requiring inclusion of property in the municipality's three-year annexation plan] by proposing to separately annex two or more areas described by Subsection (h)(1) if no reason exists under generally accepted municipal planning principles and practices for separately annexing the areas. If a municipality proposes to separately annex areas in violation of this section, a person residing or owning land in the area may petition the municipality to include the area in the municipality's annexation plan. If the municipality fails to take action on the petition, the petitioner may request arbitration of the dispute. The petitioner must request the appointment of an arbitrator in writing to the municipality. Sections 43.0564(b), (c), and (e) apply to the appointment of an arbitrator and the conduct of an arbitration proceeding under this subsection. Except as provided by this subsection, the municipality shall pay the cost of arbitration. If the arbitrator finds that the petitioner's request for arbitration was groundless or requested in bad faith or for the purposes of harassment, the arbitrator shall require the petitioner to pay the costs of arbitration.

Tex. Loc. Gov't Code Ann. § 43.052(i).

### Analysis

Spiritas contends that the trial court should have issued a TRO pending an evidentiary hearing on its request for temporary injunctive relief because in the absence of a TRO, the Town was planning to vote to annex the property under the fast-track annexation procedure before voting on the arbitration issue (and before the trial court had the opportunity to decide whether Spiritas was entitled to arbitration), thus mooting the controversy and extinguishing Spiritas's right to arbitration under section 43.052(i). The Town responds that (1) this court lacks jurisdiction to enjoin, or order the trial court to enjoin, the Town from enacting an ordinance under the separation of powers provision in the Texas Constitution, and (2) that Spiritas lacks standing to bring this original proceeding and the underlying suit, which must instead be brought in a quo warranto proceeding.

### Whether Controversy is Moot

As a threshold matter, the Town contends that this original proceeding is moot because it has now agreed to arbitrate the dispute with Spiritas. However, Spiritas has provided this court with correspondence from the Town, to which the Town has not objected, indicating that the Town's position is that after this court's stay is lifted, it can proceed to annex the property under the fast-track annexation procedure at any time while the arbitration on whether Spiritas's property should be included in the Town's three-year annexation plan is pending, presumably including until Spiritas can schedule a hearing on its request for temporary injunctive relief. In response to email correspondence from Spiritas's attorney noting that

it appears this court assumed in its December 28, 2006 abatement order that the Town "will not annex the property until the arbitration is completed," the Town's attorney wrote, "We cannot agree to that. While the arbitration will probably be concluded before the issue of whether the Town can annex before arbitration can be decided, my marching orders from the Town were to fight for the right to annex, while still engaging in arbitration." Accordingly, it appears the Town intends to resume its efforts to complete a fast-track annexation before Spiritas can obtain a hearing on its request for temporary injunctive relief.[10]

Therefore, were we to dismiss this original proceeding as moot, the parties would still be faced with the same live controversy: whether the Town should be enjoined from taking steps to annex the property pending a hearing on Spiritas's request for temporary injunctive relief, at which the trial court will determine whether the Town should be enjoined from annexing, or taking steps to annex, the property while arbitration is proceeding and pending a final trial on the merits. The Town's refusal to refrain from attempting to annex the property until then thus prevents this controversy from being moot. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex.2005) (orig. proceeding) (stating that a case becomes moot if a controversy ceases to exist between the parties at any stage of the proceedings); *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001).

**Whether Fast-track Annexation Before Arbitration is Proper**

In the absence of specific legislative authorization, the only proper method for attacking the validity of a city's annexation of territory once that property has been annexed is through a quo warranto proceeding,[11] rather than a suit by a private citizen, unless the annexation is wholly void. *City of Wichita Falls v. Pearce*, 33 S.W.3d 415, 417 (Tex.App.-Fort Worth 2000, no pet.). Thus, once a property is annexed, a landowner has no private recourse against the annexing municipality for irregularities in the annexation.

Section 43.052(i), which the legislature enacted in 1999,[12] states that a landowner may elect arbitration after it has met with no success on its petition that a municipality include an area proposed to be annexed within the three-year annexation plan. *Hughes v. City of Rockwall*, 153 S.W.3d 709, 714 (Tex.App.-Dallas 2005, pet. granted); *see also JNC Partners Denton LLC*, 190 S.W.3d at 793 (adopting *Hughes* court's interpretation of section 43.052(i)). Once that occurs, the landowner and the municipality shall proceed with arbitration as specified by section 43.052(i) pursuant to section 43.0564(b), (c), and (e), which address appointment of the arbitrator and the conduct of the arbitration. Tex. Local Gov't Code Ann. §§ 43.052(i), 43.0564(b), (c), (e); *Hughes*, 153 S.W.3d at

---

**10.** Although it is unlikely that the Town could complete such fast-track annexation proceedings before such a hearing could be held, it could take steps toward doing so, which would be in violation of the TRO that we hold below Spiritas is entitled to.

**11.** Through quo warranto proceedings, "the State acts to protect itself and the good of the public generally, through the duly chosen agents of the State who have full control of the proceeding." *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436 (Tex.1992); *City*

*of Port Isabel v. Pinnell*, 207 S.W.3d 394, 405 (Tex.App.-Corpus Christi 2006, no pet.). Therefore, in a quo warranto proceeding, the State must bring the action to question irregular use of the delegated annexation authority. *Alexander Oil Co.*, 825 S.W.2d at 436; *Pinnell*, 207 S.W.3d at 408.

**12.** Act of May 30, 1999, 76th Leg., R.S., ch. 1167, §§ 4, 17, 1999 Tex. Gen. Laws 4074, 4076–77, 4090.

714. Accordingly, a private landowner has a statutorily-created right to arbitrate a dispute under section 43.052(i) regarding whether its land should be included in a municipality's three-year annexation plan,[13] and, in accordance with that right, may maintain an action to compel arbitration under section 43.052(i) without the necessity of a quo warranto proceeding. *See Hughes,* 153 S.W.3d at 713–14; *see also JNC Partners Denton LLC,* 190 S.W.3d at 793.[14]

▮ Thus, when section 43.052(i) is read together with section 43.052(b) and (c)—requiring generally that property be included in a municipality's three-year service plan before annexation—and section 43.052(h)(1)—providing an exception to the three-year service plan requirement,[15] it is clear that a party has a privately enforceable, statutory right to arbitrate a dispute if it meets the requirements of section 43.052(i) *before* fast-track annexation actually occurs. This timing is important because after annexation occurs, an arbitra-

tion would be meaningless as a landowner could not maintain a private action to disannex the property. TEX. LOC. GOV'T CODE ANN. § 43.141–.145 (Vernon 1999 & Supp. 2006). Chapter 43 does not include a corresponding right allowing an arbitrator to order disannexation if he or she finds in favor of the private landowner. Thus, by voting to adopt a fast-track annexation of the property while a landowner's request for arbitration under section 43.052(i) was pending, a municipality could effectively cut off a landowner's right to pre-annexation arbitration; a post-annexation arbitration would be moot, as the property would have been annexed without being included in the three-year plan.[16]

▮ Here, preserving the status quo means prohibiting the Town from annexing, or attempting to annex, Spiritas's property pending a hearing on the merits of the temporary injunction request so that Spiritas's right to pre-annexation arbitration is not lost before such a hearing can be held.[17] Thus, we conclude that in order

---

13. The Town attempts to characterize the arbitration right as a merely procedural right pertaining only to the features that will be included in the service plan for the property to be annexed; however, it is clear from the plain language of section 43.052(i) that the arbitration right provided by that section encompasses the broader, threshold question of whether a municipality must include the property subject to arbitration within its proposed three-year annexation plan in the first place (i.e., before service plan features are even an issue). TEX. LOCAL GOV'T CODE ANN. § 43.052(i).

14. The Town contends that *JNC Partners* and *Hughes* are inapplicable here because those cases dealt with the municipality's refusal to arbitrate while here the Town has agreed to arbitrate. But as we have explained above, the Town has not agreed to refrain from the fast-track annexation process pending arbitration; thus, the reasoning behind these cases applies. Moreover, the Town's arguments based on the merits of the temporary injunctive relief in *JNC Partners* fail as well because,

here, we are not concerned with the merits of Spiritas's request for temporary injunctive relief but rather whether the status quo (no fast-track annexation) should be preserved pending the *trial court's* determination of the merits of Spiritas's requested temporary injunctive relief.

15. *See* TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 2005); *Pilgrim's Pride Corp. v. Cernat,* 205 S.W.3d 110, 117–18 (Tex.App.-Texarkana 2006, pet. denied) ("Because we are to presume that 'the entire statute is intended to be effective,' . . ., we also presume that each section in a statutory scheme is intended to harmonize within the scheme.").

16. We note that the supreme court has issued a stay order in *JNC Partners,* as did this court while that appeal was pending here. *JNC Partners Denton LLC,* 190 S.W.3d at 792.

17. The Town argues that Spiritas cannot prove the merits of its entitlement to arbitration; however, these arguments are not appli-

to preserve the status quo between the parties, the trial court should have granted Spiritas's application for a TRO.

## Adequacy of Remedy by Appeal

■ Having determined that the trial court should have issued the TRO in accordance with Spiritas's request, we also determine that Spiritas did not have an adequate remedy by appeal. Our supreme court has held that mandamus relief is available when a trial court has granted a TRO. *Newton,* 146 S.W.3d at 652–53 (holding that mandamus available because TRO is generally not appealable and impending election would have concluded before appeal from trial court's ruling was possible); *In re Tex. Natural Res. Conservation Comm'n,* 85 S.W.3d 201, 207 (Tex. 2002) (orig.proceeding) (holding that "mandamus is available to remedy a[TRO] that violates Rule 680's time limitations"). The same reasoning applies here to the trial court's denial of a TRO. Accordingly, we hold that Spiritas is entitled to mandamus relief to preserve its right to pre-annexation arbitration pending a hearing on its request for temporary injunctive relief.

## Standing

■ The Town challenges Spiritas's standing to bring this original proceeding challenging the Town's fast-track annexation proceedings in this case. The Town confuses Spiritas's ability to challenge procedural irregularities in annexation that

are not expressly statutorily created with the right in section 43.052(i), which was expressly granted to private landowners by the legislature. *See Pearce,* 33 S.W.3d at 417; *see also JNC Partners Denton LLC,* 190 S.W.3d at 793; *Hughes,* 153 S.W.3d at 713–14.[18] Accordingly, we hold that Spiritas has standing to bring this original proceeding and the underlying suit.

## Separation of Powers

■ The Town also argues that neither the trial court nor this court could grant Spiritas's requested relief because to do so would violate the separation of powers doctrine as set forth in the Texas Constitution by preventing a legislative body from acting pursuant to its constitutional and statutory authority. *See* TEX. CONST. art. II, § 1. According to the Town, because "[t]he power to annex is committed to the political branches of government ... [and] it is a legislative prerogative," *see Alexander Oil Co.,* 825 S.W.2d at 436, any attempt to enjoin the Town from enacting the proposed annexation ordinance would be a violation of the separation of powers doctrine.

■ The enactment of an ordinance by the legislative body of a city is a sovereign act of government. *Pinnell,* 207 S.W.3d at 417; *City of Dallas v. Couchman,* 249 S.W. 234, 239 (Tex.Civ.App.-Dallas 1923, writ ref'd). Because our system

cable for two reasons: (1) the issue before us is whether the trial court should have granted a TRO to protect the status quo *until* Spiritas could have an evidentiary hearing at which it attempted to prove the allegations it plead in support of temporary injunctive relief, and (2) the Town has already agreed to arbitration. Thus, the issue here hinges on whether Spiritas is entitled to protect its right to pre-annexation arbitration until the trial court can hold a hearing on its request for temporary injunctive relief.

18. The Town cites *City of San Antonio v. Summerglen Property Owners Ass'n,* in support of its contention that Spiritas lacks standing. 185 S.W.3d 74, 85–86 (Tex.App.-San Antonio 2005, pet. denied). However, that case involved property that was already included in the city's three-year annexation plan; thus, the arbitration right set forth in section 43.052 was not applicable. *See id.* at 79.

of government is crafted to have three separately defined branches of government, "no one of them, and least of all the judicial department, should attempt to exceed the limits set about it and invade by such interference the domain of another." *Pinnell*, 207 S.W.3d at 417 (quoting *Couchman*, 249 S.W. at 239). The ability of a court to enjoin the future enactment of ordinances, including annexation ordinances, has therefore long been strictly circumscribed, as evidenced by the following quotation:

> As before stated, the record clearly establishes that the ordinance has not been finally enacted, and that it is still pending before the board of commissioners, to be finally considered and acted upon. The decree of the court, therefore, enjoins a legislative act of the board of commissioners. It is well settled . . . . that the enactment of a void ordinance will not be enjoined, although its invalidity clearly appears, unless it also clearly appears that the mere enactment of the ordinance of itself will work irreparable injury without the intervention of some wrongful act under its authority.

*Id.* (quoting *Couchman*, 249 S.W. at 239). Restraining passage of an ordinance is a legislative act, and such restraint cannot be exercised by the courts. *Id.; City of Monahans v. State ex rel. Cook*, 348 S.W.2d 176, 179 (Tex.Civ.App.-El Paso 1961, writ ref'd n.r.e.).

■■■■ A sole exception to this general rule exists when irreparable injury will result from the mere passage of the ordinance. *Pinnell*, 207 S.W.3d at 418; *Couchman*, 249 S.W. at 239. More is required than the mere enactment of the void ordinance, even one invalid on its face; it must also clearly appear "that the mere enactment of the ordinance of itself will work irreparable injury without the inter-

vention of some wrongful act under its authority." *Pinnell*, 207 S.W.3d at 418; *Couchman*, 249 S.W. at 239. The fact that an ordinance is void alone works no injury. *Pinnell*, 207 S.W.3d at 418; *Couchman*, 249 S.W. at 239. Only after acts are impending or steps are already being taken to directly cause harm does the basis for relief exist, and only then may the authority of a court be invoked to restrain the injury. *Pinnell*, 207 S.W.3d at 418; *Couchman*, 249 S.W. at 239. When passage of the ordinance will cause no irreparable harm or injury beyond the power of redress by subsequent judicial proceedings, judicial interference is not warranted, even if the proposed ordinance disregards some constitutional restraint. *Pinnell*, 207 S.W.3d at 418; *City of Houston v. Houston Gulf Coast Bldg. & Constr. Trades Council*, 697 S.W.2d 850, 852 (Tex.App.-Houston [1st Dist.] 1985, no writ).

Here, the irreparable harm to Spiritas is clear: if the Town were to annex the property under fast-track annexation procedures before Spiritas was able to have a hearing on its request for temporary injunctive relief, which is what the Town has expressly stated it intends to do, Spiritas would lose its statutory right to pre-annexation arbitration under section 43.052(i) altogether. Accordingly, we believe that this situation falls within the exception to the general rule and that granting Spiritas's requested TRO relief here does not violate the separation of powers provision in the Texas Constitution.

■■■■ According to the Town, this interpretation of state law is erroneous because "[t]he procedures to provide service plan details are merely procedural matters that do not affect in any way the Town's authority to annex" and that "[e]ven if [Spiritas's] concerns about the Town's annexation procedures were correct (which the Town strenuously denies),

this Court cannot violate the ... separation of powers doctrine and issue any order to prevent a governmental body from exercising its legislative prerogative in an annexation context." But the Town's position would render section 43.052(i)'s arbitration provision meaningless. Faced with a landowner's attempt to assert its statutory right to arbitrate a dispute—and, thus, attempt to require a municipality to include property within its three-year annexation plan *before* it is annexed according to fast-track procedures—a municipality could simply refuse to arbitrate and complete fast-track annexation proceedings, leaving a landowner with no choice but to seek a quo warranto proceeding or attempt to disannex the property under the procedures set forth in chapter 43. Because Texas public policy favors arbitration,[19] it would make little sense to conclude that the legislature specifically granted a private landowner a right to pre-annexation arbitration without the ability to enforce that right. We cannot construe a statutory provision to lead to an absurd result if the provision is subject to another more reasonable interpretation. *C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 322 n. 5 (Tex.1994), *abrogated on other grounds by Battaglia v. Alexander*, 177 S.W.3d 893 (Tex.2005); *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex. 1991); *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, No. 02–05–00315–CV, —— S.W.3d ——, ——, 2007 WL 937533, at *4 (Tex.App.-Fort Worth March 29, 2007, no pet. h.). Accordingly, we hold that our exercise of jurisdiction in this case does not violate the separation of powers provision set forth in the Texas Constitution.

## Conclusion

Having granted Spiritas's motion for leave to extend the page limitation on its reply brief, and the Town's motion for leave to file a supplemental response, and having concluded that the trial court should have issued a TRO to maintain the status quo pending an evidentiary hearing on, and determination of the merits of, Spiritas's request for temporary injunctive relief—i.e., to preserve Spiritas's statutory right to pre-annexation arbitration pending such a hearing and determination of the merits of Spiritas's request for temporary injunctive relief—we conditionally grant relator's petition for writ of mandamus and order the trial court to vacate its order denying the TRO and to issue a TRO in accordance with this opinion and the requirements of rule 680, including the time periods included therein for holding a hearing on Spiritas's request for temporary injunctive relief. *See* TEX.R. CIV. P. 680. The TRO should preclude the Town or any of its agents from taking any action to annex Spiritas's property until the trial court holds an evidentiary hearing on, and determines the merits of, Spiritas's temporary injunction request. A writ of mandamus will issue only if the trial court fails to comply with this order. This court's emergency stay order of December 19, 2006 and the trial court's January 5, 2007 order granting the parties agreed temporary injunctive relief pending this court's determination of this original proceeding shall remain in effect until the trial court issues the TRO described above, at which time our emergency stay will be automatically lifted without need for any further order.

---

19. *See In re AIU Ins. Co.*, 148 S.W.3d 109, 122 (Tex.2004) (orig. proceeding); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex.1992) (orig. proceeding).