ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

September 3, 2009

The Honorable Elizabeth Murray-Kolb
Guadalupe County Attorney
101 East Court Street, Suite 104
Seguin, Texas 78155-5779

Opinion No. GA-0737

Re: Whether a municipality engaged in the process of annexing territory may use section 43.052(h)(1) of the Local Government Code under various circumstances (RQ-0745-GA)

Dear Ms. Murray-Kolb:

You make several inquiries about an annexation undertaken by the City of Cibolo (the "City").[1] Your first two questions relate to annexations under Local Government Code section 43.052. *See* Request Letter at 1; *see also* TEX. LOC. GOV'T CODE ANN. § 43.052 (Vernon 2008). Your third question concerns annexation service plans under Local Government Code section 43.056. *See* Request Letter at 1; *see also* TEX. LOC. GOV'T CODE ANN. § 43.056 (Vernon 2008).

Subsection (c) of section 43.052 requires a municipality to prepare an annexation plan identifying areas that may be annexed beginning on the third anniversary of the date the plan is adopted or amended, commonly referred to as a three-year plan. *See* TEX. LOC. GOV'T CODE ANN. § 43.052(c) (Vernon 2008); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 623 (Tex. 2008). Subsection (h)(1) provides, however, that "[t]his section [43.052] does not apply to an area proposed for annexation if . . . the area contains fewer than 100 separate tracts of land on which one or more residential dwellings are located on each tract[.]" TEX. LOC. GOV'T CODE ANN. § 43.052(h)(1) (Vernon 2008).

You first ask whether the exception provided at Local Government Code section 43.052(h)(1) may be utilized "if there is not a residence on each tract of the area proposed for annexation." Request Letter at 1. You explain that the City annexed an area referred to as Tract "A" that is composed of fifty-seven lots, only fifty-six of which contain a residence. *Id.* at 2.

Your question raises issues of statutory construction. In construing a statute, we must ascertain the Legislature's intent in enacting the statute. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We look first to the statutory language in attempting to understand that intent. *Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008). Section 43.052(h)(1) excepts from the requirements

---

[1]Request Letter at 1 (*available at* http://www.texasattorneygeneral.gov).

of section 43.052 an area proposed for annexation that "contains fewer than 100 separate tracts of land *on which one or more residential dwellings are located on each tract.*" TEX. LOC. GOV'T CODE ANN. § 43.052(h)(1) (Vernon 2008) (emphasis added). The emphasized language modifies the phrase "100 separate tracts of land," such that the area must contain fewer than one hundred of the type of tracts described by that phrase. Determining the meaning of the word "contains" is key in understanding whether the exception allows a city to annex additional tracts on which no residential dwelling place is located.

The transitive verb "contain," in its usual and ordinary sense, means "comprise, include." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 269 (11th ed. 2005); *see also* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) (indicating that words shall be "construed according to the rules of grammar and common usage").[2] Which of the two meanings is ascribed to the word contains has a significant impact on the application of the statute. The term "include" is typically a term of enlargement, "not of limitation or exclusive enumeration." TEX. GOV'T CODE ANN. § 311.005(13) (Vernon 2005); *see also Leach v. State*, 170 S.W.3d 669, 672–73 (Tex. App.—Fort Worth 2005, pet. ref'd) (interpreting the term "including" as one of enlargement and not limitation). Thus, it can be argued that the Legislature used the word "contains" to indicate that while the area annexed under the exception must include fewer than one hundred of the type of tracts described in (h)(1), it can also include other types of tracts.

Conversely, it can be argued that the Legislature chose not to use the word "include" because it intended the word "contains" to mean "comprise," which in its ordinary sense means "to be made up of" and is commonly used to imply there can be no other thing than that which is specifically listed. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 256 (11th ed. 2005) (defining "comprise"); THE NEW OXFORD AMERICAN DICTIONARY 859 (2001) (explaining that in its usage "[i]nclude has a broader meaning than comprise").

Section 43.052(h)(1) is not a model of clarity. Under the plain language of the statute, it would be possible to apply either of the two meanings to the word "contains," each of which would yield a different result. Thus, because the Legislature was not clear about which of the two possible meanings it intended to apply, we should consider the object sought to be attained, circumstances of enactment, and the legislative history in construing the meaning of section 43.052(h)(1). *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005) (providing a court may consider the object sought to be attained, circumstances of enactment, and legislative history when construing a statute). The requirement for a three-year plan, as enacted in Senate Bill 89, was intended to address perceived problems with the annexation of highly-populated and built-out areas.[3] Statements made during the

---

[2]We find at least one Texas court that has recognized the word "contain" to mean "to comprise, include." *See Cunningham v. State*, No. 06-03-00094-CR, 2004 WL 2070816, at *12 (Tex. App.—Texarkana Sept. 17, 2004, pet. ref'd) (not designated for publication).

[3]In 2003, legislation was proposed to delete the section 43.052(h)(1) exception. *See* Tex. H.B. 2202, 78th Leg., R.S. (2003). In a public hearing before the Land and Resource Management Committee, Representative Mowery

(continued...)

floor debate on the language that ultimately became section 43.052(h)(1) indicate that the purpose of the exception is to set a ceiling regarding the level of development that may exist in an area annexed under section 43.052(h)(1), and not to prohibit the annexation of "vacant land" or "open tracts." Debate on Tex. S.B. 89 on the Floor of the House, 76th Leg., R.S. (May 24, 1999) (statements of Representative Bosse) (tape available from House Video/Audio Services). Taken together, this appears to indicate that the Legislature intended for the word "contains" to mean "include" in this context.

Moreover, Texas courts have characterized section 43.052(h)(1) as applying to the annexation of "sparsely-populated," "rural," and "predominately unimproved" land.[4] See Hughes, 246 S.W.3d at 623–24 (explaining that section 43.052(h)(1) applies to "sparsely-populated" areas); id. at 633 (Willet, J., dissenting) (indicating the exception allows for the "quick annexation of rural land"); In re Spiritas Ranch Enters., L.L.P., 218 S.W.3d 887, 895 (Tex. App.—Fort Worth 2007, no pet.) ("[S]ection 43.052(h)(1) . . . provides that a municipality is not required to include sparsely populated and predominately unimproved land in its three-year plan.") (footnote omitted); JNC Partners Denton, LLC v. City of Denton, 190 S.W.3d 790, 791 (Tex. App.—Fort Worth 2006, pet. denied) (section 43.052(h)(1) "provides that a municipality is not required to include sparsely populated and predominately unimproved land in its three-year plan"). Although we find no court that has specifically considered the question you raise, the courts' characterizations of section 43.052(h)(1) are consistent with our understanding of the purpose of the exception—to establish a ceiling regarding the level of development that may exist in an area annexed under the exception. It is also instructive that when courts have reviewed the application of section 43.052(h)(1) in situations in which there is not a residence on each tract, nothing in those opinions indicates that the annexations are prohibited.[5]

---

[3](...continued)
described the bill as one that would "strike[] the 100 roof-top exemption." Hearings on Tex. H.B. 2202 Before the House Comm. on Land & Resource Mgmt., 78th Leg., R.S. (Apr. 30, 2003). A witness explains the circumstances of the enactment and purpose of section 43.052(h)(1):

> In the late '90's, the character of annexations started to change. Kingwood is the best example of that. Kingwood was a residential subdivision outside of Houston, had a population in the tens of thousands. And the City went to annex that piece of property and the residents weren't happy with the services they received after the annexation. Now, contrary to popular belief, Senate Bill 89, which was designed to fix that Kingwood problem, wasn't enacted to restrict a city's ability to annex.

Id. (statement of Scott Houston, Tex. Mun. League) (tape available from House Video/Audio Services).

[4]While not dispositive, it appears from the briefing received by our office that cities routinely use section 43.052(h)(1) to annex areas that include unimproved tracts. See Request Letter at 4; Brief from Scott N. Houston, Director of Legal Services, Texas Municipal League, at 3 (Oct. 21, 2008) (on file with the Opinion Committee).

[5]In In re Spiritas, the area annexed pursuant to section 43.052(h)(1) is described as consisting of "1,103 acres of nonresidential properties." In re Spiritas, 218 S.W.3d at 891. And in the Hughes case, the area annexed under section 43.052(h)(1) is described by the City of Rockwall as including tracts that do not contain residential dwellings. See City

(continued...)

Based upon the ordinary meaning of the word "contains," the object sought to be attained, the circumstances of enactment, the legislative history, and the characterization of this exception by the courts, we conclude that the (h)(1) exception may be utilized even though there is not a residence on each tract of the area proposed for annexation. Thus, the single vacant lot at issue here is irrelevant in determining whether the area contains fewer than one hundred tracts upon which a residential dwelling is located. While we reach this decision, we do so with some reluctance. Given the importance of the annexation laws to property owners and municipalities, this is an issue that would be better addressed through legislative clarification.

One brief received in our office argues that construing the word "contains" to mean "include" will "create[] an incongruous result" if applied to the remainder of chapter 43, noting that, under the general rules of statutory construction, "legislative intent must be determined from the entire act" and that "the meaning of particular words in a statute may be ascertained by reference to other words associated with them in the same statute."[6] The brief specifically cites to section 43.0546(d)(5), which provides that a prohibition against the annexation of certain narrow strips of land does not apply to territory "that contains fewer than 50 inhabitants." Allen Brief at 4; TEX. LOC. GOV'T CODE ANN. § 43.0546(d)(5) (Vernon 2008). The brief argues that under the construction we use here, the section 43.0546(d)(5) provision would mean "that the territory could have more than 50 inhabitants so long as the territory has fewer than 50 inhabitants." Allen Brief at 4. The brief also suggests that our construction renders the phrase "on each tract" surplusage. Id.

In response to the briefer's arguments, we note first that the usual rules of statutory construction cited will give way when "there [is] something in the context or the nature of things to indicate that [the Legislature] intended a different meaning." Brown v. Darden, 50 S.W.2d 261, 263 (Tex. 1932). There are instances when the same term is given a different meaning in different sections of a statute because of the context in which the word is found. See, e.g., Paddock v. Siemoneit, 218 S.W.2d 428, 583 (Tex. 1949). Thus, the construction of the term "contains" under section 43.052(h)(1) does not necessarily apply to any other statutory provision in chapter 43. More importantly, we do not agree that construing the term "contains" to mean "include" has the result suggested by the briefer. We do not suggest that an area proposed for annexation can contain more than one-hundred separate tracts of land on which a dwelling is located but rather that the area may contain other types of tracts, such as vacant or open tracts. As for the phrase "on each tract," we believe its purpose at the end of the modifying phrase is to clarify that the "fewer than 100" applies to tracts with dwellings, rather than the total number of dwellings in the annexed area. See In re Estate of Nash, 220 S.W.3d 914, 918 (Tex. 2007) (explaining that the Legislature may repeat itself for emphasis).

---

[5](...continued)
of Rockwall's Brief on the Merits, at 2 ("[T]he City staff has determined that out of 13 tracts in the said 725-acre Tract A, 5 tracts have residential dwellings . . . [and] are well within the exception in section 43.052(h)(1). . . ."). Moreover, the City of Fort Worth in an amicus brief filed in the Hughes case explains that "Fort Worth has completed 62 expedited annexations of vacant and undeveloped land under section 43.052(h)(1)." See Brief on the Merits of Amicus Curiae City of Fort Worth in Support of the City of Rockwall, at v.

[6]See Brief from Joe B. Allen, on behalf of Grid Raceplex Holdings, Ltd., at 3–4 (Dec. 12, 2008) (on file with the Opinion Committee) [hereinafter Allen Brief].

Your second question is "whether a municipality can even utilize the exceptions set forth in Section 43.052(h) when said municipality has never adopted a" three-year plan. Request Letter at 1. We understand you to ask whether a municipality, pursuant to its fundamental authority, may annex territory under section 43.052(h) if the municipality has not adopted a three-year plan. Courts have held that section 43.052's requirement to adopt a three-year annexation plan is procedural in nature and does not go to the inherent authority of a city to annex territory. *See Werthmann v. City of Fort Worth*, 121 S.W.3d 803, 807 (Tex. App.—Fort Worth 2003, no pet.); *City of Balch Springs v. Lucas*, 101 S.W.3d 116, 122 (Tex. App.—Dallas 2002, no pet.); *City of San Antonio v. Hardee*, 70 S.W.3d 207, 212 (Tex. App.—San Antonio 2001, no pet.). As such, an annexation under section 43.052(h) is not void because of a municipality's failure to adopt a three-year plan.

Finally, you ask whether a municipality may, in its annexation service plan, require residents of an area annexed under section 43.052(h)(1) to "pay for the capital improvements necessary to provide [m]unicipal [s]ervices[.]" Request Letter at 1. Before annexing an area, a municipality must complete a service plan that provides for the extension of municipal services to the territory being annexed. *See* TEX. LOC. GOV'T CODE ANN. § 43.056(b) (Vernon 2008); *see also id.* § 43.065(b) (providing that section 43.056(b)–(o) applies to the annexation of an area under the subchapter C-1 procedures). "A service plan may not . . . require a landowner in the area to fund the capital improvements necessary to provide municipal services in a manner inconsistent with Chapter 395." *Id.* § 43.056(f)(2). Chapter 395 applies only to impact fees, which are defined as "a charge or assessment imposed by a political subdivision against new development in order to generate revenue for funding or recouping the costs of capital improvements or facility expansions necessitated by and attributable to the new development." *Id.* § 395.001(4) (Vernon 2005). A determination as to whether a particular property development fee constitutes an impact fee under chapter 395 requires the resolution of questions of fact that cannot be resolved in an attorney general opinion. *See* Tex. Att'y Gen. Op. Nos. GA-0637 (2008) at 5, GA-0482 (2006) at 3.

## S U M M A R Y

      While the statute would benefit from legislative clarification, we conclude that section 43.052(h)(1) of the Local Government Code does not require that a residence be located on each tract of the area proposed for annexation. An annexation undertaken pursuant to section 43.052(h) is not void if the municipality fails to adopt a three-year annexation plan. Whether a service plan requires a landowner to fund a capital improvement in a manner inconsistent with Local Government Code chapter 395 requires the resolution of questions of fact that cannot be determined in an attorney general opinion.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Christy Drake-Adams
Assistant Attorney General, Opinion Committee