# IN THE SUPREME COURT OF TEXAS

No. 10-0375

ATMOS ENERGY CORPORATION, CENTERPOINT ENERGY RESOURCES
CORPORATION, AND TEXAS GAS SERVICE COMPANY, PETITIONERS,

v.

THE CITIES OF ALLEN, ET AL., AND RAILROAD COMMISSION OF TEXAS,
RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

**Argued September 15, 2011**

JUSTICE WAINWRIGHT delivered the opinion of the Court.

In 2003, the Texas Legislature amended the Gas Utility Regulatory Act (GURA) to allow gas utilities (Utilities) an opportunity to recover capital investments in Texas' gas pipeline infrastructure made during the interim period between rate cases filed pursuant to Chapter 104, Subchapter C, of the Utilities Code. Act of May 16, 2003, 78th Leg., R.S., ch. 938, § 1, 2003 Tex. Gen. Laws 2801 (codified as TEX. UTIL. CODE § 104.301). This legislation is referred to as the "GRIP statute" or "GRIP amendment."[1]

---

[1] The terms "Gas Reliability Infrastructure Program" and "GRIP" do not appear in the applicable statutes or administrative rules. However, we adopt the terminology used by the trial and appellate courts as well as the parties and refer to section 104.301(a) as the "GRIP statute" or "GRIP amendment."

The GRIP statute permits a gas utility to file a new tariff adjusting its base rates to recover the costs of new capital investment made in the preceding calendar year, without the necessity of filing a rate case. *See* House Comm. on Regulated Industries, Bill Analysis, Tex. C.S.S.B. 1271, 78th Leg., R.S. (2003). Only a utility that has had a rate case within the preceding two years may utilize the GRIP statute. TEX. UTIL. CODE § 104.301(a). The adjustment is based upon the utility's investment subsequent to that recent rate case, the return on investment, depreciation and federal income tax factors established in the rate case, and the ad valorem and revenue-related taxes in effect at the time of the adjustment. TEX. UTIL. CODE § 104.301 (a), (b), (d). The GRIP statute provides, in relevant part:

> A gas utility that has filed a rate case under Subchapter C within the preceding two years may file with the regulatory authority a tariff or rate schedule that provides for an interim adjustment in the utility's monthly customer charge or initial block rate to recover the cost of changes in the investment in service for gas utility service.

TEX. UTIL. CODE § 104.301(a). The Legislature passed the GRIP statute to exempt utilities from having to file a rate case for the five-year period during which GRIP filings are permitted, while allowing the utilities to recover their interim costs related to invested capital. House Comm. on Regulated Industries, Bill Analysis, Tex. C.S.S.B. 1271, 78th Leg., R.S. (2003). The GRIP statute allowed utilities to begin recovering capital investment costs more quickly, rather than waiting, on occasion, years for that recovery. *See id.* The statute thus created an incentive for investment in Texas' gas pipeline infrastructure to meet continuing growth in the state and to enhance safety by replacing aging facilities. *See id.* If a subsequent contested rate proceeding determines that the prior interim rate adjustments are disallowed, those amounts may be recovered in the subsequent

2

contested rate case. TEX. UTIL. CODE § 104.301(a); 16 TEX. ADMIN. CODE § 7.7101(I). Prior to GRIP, a gas utility could not begin recovering the costs of new investment not already covered by a final rate until its next rate case. House Comm. on Regulated Industries, Bill Analysis, Tex. C.S.S.B. 1271, 78th Leg., R.S. (2003); *see also* TEX. UTIL. CODE § 104.301(a). Completing a rate case can be a lengthy and expensive process, requiring months or years of litigation and preparation of detailed technical documentation and expert testimony. Due in part to these constraints, utilities were facing challenges in obtaining necessary capital for new investments in gas pipeline infrastructure. House Comm. on Regulated Industries, Bill Analysis, Tex. C.S.S.B. 1271, 78th Leg., R.S. (2003); *see also* TEX. UTIL. CODE § 104.301(a).

To give effect to the administrative rate change process envisioned by the GRIP statute, the Railroad Commission (Commission) promulgated Rule 7.7101, titled "Interim Rate Adjustments" and known as the "GRIP rule." 16 TEX. ADMIN. CODE § 7.7101. The GRIP rule lists the requirements for processing a utility's application to amend its tariff or rate schedule under the GRIP statute. *Id.*

When several Utilities filed interim rate adjustments under GRIP, fifty-one cities (Cities) denied those filings for non-ministerial reasons. The dispute before us concerns the appellate jurisdiction of the Commission to review the Cities' decisions on the Utilities' interim rate adjustments and the breadth of that jurisdiction.

## I. Background

A gas utility makes its GRIP filing with the applicable "regulatory authority." The Legislature, through GURA, has charged both the Commission and Texas municipalities with the

3

responsibility of serving as the regulatory authorities of the state's gas utilities. TEX. UTIL. CODE §§ 102.001(a), 103.001. A municipality has original jurisdiction over a rate filing if the utility's customers are within municipal boundaries, or the Commission has original jurisdiction over the filing if the utility's customers are outside municipal boundaries. *Id.*

After passage of the GRIP statute, Atmos Energy Corporation ("Atmos") filed interim rate adjustments, or GRIP filings, with the Commission and several municipalities to charge adjusted rates. The Commission approved Atmos' GRIP filings, but numerous municipalities denied Atmos' filings. The Cities found the proposed rate increases to be unjust and unreasonable.[2] Atmos appealed the Cities' denials to the Commission, which exercised appellate authority under section 102.001(b). The Cities then sought to intervene in the appeals to the Commission and to require the Commission to hold contested case proceedings in the appeals. The Commission denied their interventions and requests for evidentiary hearings on the ground that neither the GRIP statute nor the GRIP rule authorizes contested case proceedings in connection with GRIP filings. The Commission issued final orders denying all pending motions, including the Cities' pleas to intervene, and approving Atmos' application for the interim rate increases. Because 102.001(b) purports to give the Commission "exclusive appellate jurisdiction" to review the matter and the Cities could not appeal the Commission's rulings because they were not parties, the Cities did not believe they had a way to appeal the Commission's rulings.

---

[2] Municipalities are required to set rates at a level that is "just and reasonable." TEX. UTIL. CODE § 104.003(a).

Fifty-one Texas cities[3] then pursued a declaratory judgment action in district court against the Commission, challenging the validity of Commission Rule 7.7101, the GRIP rule. 16 TEX. ADMIN CODE § 7.7101; TEX. GOV'T CODE § 2001.038 (allowing parties to challenge validity of agency rule by declaratory judgment action). The Cities argued that the GRIP rule was void because it does not provide for an adjudicatory hearing in a utility's appeal of a municipality's denial of the utility's GRIP filing. The Cities argued that the Commission created a rule that allows the Commission to issue a final order approving interim rate adjustments without providing the municipality an opportunity to respond and present evidence, exceeding the statutory authority delegated to it by the GRIP amendment. Atmos, CenterPoint Energy Resources Corporation ("CenterPoint"), and Texas Gas Service Company ("Texas Gas") intervened in support of the validity of the Commission's rule.

The trial court issued a final judgment denying the Cities' request for declaratory relief, but issued findings of fact and conclusions of law stating that subsections 7.7101(g)(2)(B) and (g)(2)(C) of the Commission's GRIP rule were void.[4] The trial court held that the Legislature did not intend to authorize municipalities to conduct a substantive review of GRIP filings, only a "ministerial

[3] The fifty-one Texas cities are Allen, Argyle, Arlington, Bedford, Brownwood, Burkburnett, Burleson, Caddo Mills, Canyon, Carrollton, Cedar Hill, Clyde, College Station, Corral City, Crandall, Dimmitt, Eastland, Everman, Farmers Branch, Fate, Friona, Frisco, Grapevine, Haltom City, Harker Heights, Hereford, Highland Park, Honey Grove, Hurst, Irving, Kaufman, Keene, Keller, Killeen, Lake Worth, Lancaster, Lewisville, Longview, Mansfield, Midlothian, Parker, Ponder, Red Oak, Snyder, Stamford, Sulphur Springs, The Colony, Tyler, Wellman, Westlake and Wylie. The Cities, other than the City of Longview, participated in the litigation as a coalition of cities, referring to themselves as "the Cities of Allen, et al." The City of Longview acted as a separate party before the trial court and filed a separate notice of appeal. Because the City of Longview did not file a petition for review in this Court, its claims were apparently resolved at the court of appeals.

[4] Subsections 7.7101(g)(2)(B) and (g)(2)(C) allow the Commission's director to recommend approval of some elements of the GRIP filing to allow only those elements of the interim rate adjustment to take effect without further Commission action, or to reject the application, respectively.

5

review of the compliance with basic requirements." Accordingly, the trial court held that the Cities have no authority to deny utilities' interim filings under section 104.301(a). They may challenge such a filing by initiating a rate case, but the Cities do not have a right to an adjudicative or contested hearing on GRIP filings with the Railroad Commission. However, the trial court also held that a utility does not have the authority to appeal an improper denial to the Railroad Commission because the Legislature did not provide an appellate mechanism in the GRIP Amendment (section 104.301(a)), and the Railroad Commission does not have the authority to apply its Rule 7.7101 to the action of a city. Because the Commission was not aggrieved by the district court's take-nothing judgment against the Cities, the Commission did not appeal the conclusion of law that the Commission lacked jurisdiction over the municipalities' decisions denying GRIP filings. Based on its stated deference to the district court's conclusions of law, the Commission began to decline jurisdiction over appeals brought by the utilities after municipalities denied their GRIP filings. The Commission did not appeal the trial court ruling that certain subsections of the rule were void.

The court of appeals affirmed the judgment of the trial court, holding that a ministerial review for compliance "is all that is required." 309 S.W.3d 563, 574. The court of appeals also affirmed that GRIP rule subsections 7.7101(g)(2)(B) and (g)(2)(C) are only void to the extent the Commission attempts to reject a GRIP filing over which it holds regulatory authority for any reason other than failure to comply with the statutory requirements. *Id.* at 576.

Additionally, the court of appeals held that appellate review by the Commission is "not available when a municipality denies a GRIP filing after conducting a ministerial review for compliance with the statute" because there is "no indication that a municipality's denial of a GRIP

6

filing for failure to comply with the statutory requirements is considered 'an order or ordinance of a municipality' as contemplated by section 102.001." *Id.* at 575. For other reasons, we affirm the judgment of the court of appeals, affirming the trial court and denying the Cities' request for declaratory relief.

## II. Discussion

This case turns on statutory construction of GURA, the GRIP statute and the GRIP rule. The construction of a statute is a question of law that we review de novo. *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). In construing a statute, the court's task is to give effect to the Legislature's expressed intent. *Iliff v. Iliff*, 339 S.W.3d 74, 79 (Tex. 2011). A court may consider the object sought to be obtained, circumstances under which the statute was enacted, and the consequences of a particular construction when construing statutes, whether or not the statute is ambiguous. TEX. GOV'T CODE § 311.023 (1), (2), (5); *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003).

### A. The Commission's Appellate Jurisdiction

The first issue presented to this Court is whether the Commission has appellate jurisdiction to review the Cities' denials. Section 102.001(b) of the Texas Utilities Code provides, in relevant part: "The railroad commission has exclusive appellate jurisdiction to review an order or ordinance of a municipality exercising exclusive original jurisdiction as provided by this subtitle." TEX. UTIL. CODE § 102.001(b). This grant of appellate authority clearly gives the Commission jurisdiction to review the Cities' denials of the interim rate increases.

7

Section 102.001(b) falls under Subtitle A of the Utilities Code and is titled "General Powers of the Railroad Commission." TEX. UTIL. CODE § 102.001(b). The relationship of section 102.001(b) and GURA confirms the Commission's appellate jurisdiction over municipal denials, since both GURA and the GRIP statute are in Subtitle A of the Texas Utilities Code. Section 102.001(b) grants the Commission appellate jurisdiction over the appeal from an "order or ordinance of a municipality exercising exclusive original jurisdiction *as provided by this subtitle*." *Id.* (emphasis added).

The Commission's exclusive appellate jurisdiction is over a municipality's applicable "order or ordinance." *Id*. The parties themselves agree that the Cities' denials were promulgated by ordinance.

The Commission argues that there is no need for utilities to appeal a municipality's action since municipalities are not entitled to deny a GRIP filing, except for a failure to comply with the statute.[5] However, the Commission recognizes that 102.001(b) literally applies when a city denies a GRIP filing by order or ordinance and therefore grants the Commission appellate jurisdiction.

Furthermore, the view that the Legislature had withheld appellate jurisdiction in this case from the Commission could frustrate GRIP's purpose. The Legislature designed GRIP to incentivize gas utilities to expand infrastructure and empowered them to file interim rate adjustments in between rate cases. House Comm. on Regulated Industries, Bill Analysis, Tex. C.S.S.B. 1271, 78th Leg., R.S. (2003). Without the Commission's appellate jurisdiction, a city could deny these filings for

---

[5] The Commission also argues that because a municipality is not entitled to deny a GRIP filing that complies with the statute, the denial should be subject to mandamus. Since we hold that the Commission has appellate jurisdiction under section 102.001(b) over a GRIP denial, mandamus review by a district court is not necessary.

8

non-ministerial reasons, leaving a lengthy and expensive contested rate case as the only recourse to effect a rate adjustment to recoup infrastructure investment. The Cities' construction is rebutted by the language of section 102.001(b) and is inconsistent with the Legislature's objective of expediting recovery of such investments as a means of encouraging infrastructure investment. We conclude, reversing the court of appeals on this point, that the Commission has appellate jurisdiction over interim rate adjustments under 102.001(b).

## B. Scope of Commission's Jurisdiction

The second issue presented to this Court is the breadth of the Commission's appellate jurisdiction under section 102.001(b). The Commission and the Utilities argue that GRIP does not provide for evidentiary hearings, and that a substantive review of the interim rate adjustment is reserved instead for the next rate case. The Cities argue three reasons why municipalities are entitled to an evidentiary hearing.

First, the Cities argue that they are entitled to an evidentiary hearing under 102.001(b) because GRIP filings are rate proceedings. Although the Cities attempt to limit this evidentiary hearing to the discrete issues contained in the GRIP filing, it is unclear how this would be different from a compliance review with the statutory requirements. The Cities argue that they are entitled to an evidentiary review of the GRIP filings before the Commission, since ratemaking proceedings are by definition contested cases.

A GRIP filing does not constitute a contested case. A "contested case" is defined as a "proceeding, including a ratemaking or licensing proceeding in which the legal rights, duties or privileges of a party are to be determined by a state agency after an opportunity for adjudicative

9

hearing." TEX. GOV'T CODE § 2001.003(1). It is in the rate case that the legal rights, duties and privileges of the affected parties will be determined, and not in the GRIP filing. Municipalities challenging a GRIP filing are not entitled to an adjudicatory hearing because the Commission's compliance review is not a contested case.

Second, the Cities claim to be entitled to a hearing to review the interim rate adjustment filings for reasonableness and prudence, under 104.301(a), at any time. The Utilities and the Commission agree that the Cities may file a rate case at any time after the interim rate filing, but that review is different from the Commission's compliance review under 102.001(b). The asserted review for reasonableness and prudence is also a proper subject of a rate case. To insert that review at the stage the Commission exercises appellate jurisdiction over a city's denial of an interim rate adjustment would undermine the streamlined process for implementing these interim rates for gas utilities. *See* House Comm. on Regulated Industries, Bill Analysis, Tex. C.S.S.B. 1271, 78th Leg., R.S. (2003). Instead, subsections 104.301(a) and (h) provide for a substantive review and hearing in the next rate case the utility files after a GRIP filing. TEX. UTIL. CODE § 104.301(a), (h).

Third, the Cities also argue that they are entitled to a reasonableness and prudence review in an adjudicatory hearing, limited to the GRIP filing.

Section 104.301(a) provides, in relevant part:

A gas utility that has filed a rate case...may file with the regulatory authority a tariff or rate schedule that provides for an interim adjustment.... After the issuance of a final order...any change in investment that has been included in an interim adjustment...shall no longer be subject to subsequent review for reasonableness or prudence.

10

TEX. UTIL. CODE § 104.301(a). The Cities argue that 104.301(a) implies that they are entitled to a reasonableness and prudence review in a limited evidentiary hearing with the Commission to review interim rate adjustments. However, there is no positive grant by the Legislature for this review in GRIP and any evidentiary hearing would frustrate the objective of a streamlined process. Neither GURA nor GRIP provide for this middle ground of a limited evidentiary hearing; rather, GURA only provides for a rate case. We presume that every word of a statute has been included or excluded for a reason. *City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex. 2006). The Legislature intended a streamlined process, and an evidentiary review beyond a compliance check could frustrate that purpose. It is difficult to imagine a distinction between an evidentiary hearing to challenge a GRIP filing and a contested case proceeding. We would invade the Legislature's province if we were to take the Cities' invitation to create an evidentiary hearing supported by neither the text nor the purpose of the GRIP statute.

Importantly, the Legislature implemented protections for the ratepayers when a utility makes a GRIP filing. A utility may not avail itself of the interim rate adjustment unless that utility brought a rate case pursuant to Chapter 104, Subchapter C, within the two years prior to its GRIP filing. TEX. UTIL. CODE § 104.301(a). The Legislature specified this time as the minimum requirement for implementing an adjustment. House Comm. on Regulated Industries, Bill Analysis, Tex. H.B. 1942, 78th Leg., R.S. (2003). A utility that makes interim rate adjustments is also required to undergo another rate case within five years and six months after implementing its first amended tariff or rate schedule. TEX. UTIL. CODE § 104.301(h). If a utility does avail itself of an interim rate adjustment filing, GURA requires an annual recalculation of any interim adjustments. TEX. UTIL. CODE

11

§ 104.301(c). Further, a gas utility seeking to implement an interim rate adjustment must electronically file with the Commission an annual earnings monitoring report as part of the application describing the investment projects completed and placed in service. TEX. UTIL. CODE § 104.301(e). This report includes a statement of the reasons the rates are not unreasonable or in violation of law. *Id.*

Further, any amounts collected as interim rate adjustments are subject to a full refund to the extent the interim recovery of infrastructure investments are later disallowed at the next rate case. TEX. UTIL. CODE § 104.301(I). The GRIP statute does not, by its terms, limit a regulatory authority's power to instigate a rate case at any time to establish just and reasonable rates. TEX. UTIL. CODE § 104.301(I). Under GURA the Commission or a municipality retains authority to institute a proceeding, either on its own or at the complaint of a party, to determine if a utility's rates are unreasonable or in violation of the law. TEX. UTIL. CODE §§ 104.301(I), 104.151. Therefore, a municipality could file a rate case on its own motion whenever it perceives the need after a GRIP filing. TEX. UTIL. CODE § 104.151. These protections further reinforce our view that the interim GRIP filings are subject only to a ministerial review of the statutory requirements by the Commission.

### III. Conclusion

We conclude that the Railroad Commission has appellate jurisdiction under section 102.001(b) of the Texas Utilities Code over municipalities' orders or ordinances concerning interim rate adjustments, but that jurisdiction is limited to review of the Utilities' filings for compliance with the GRIP statute, section 104.301, and the GRIP rule, section 7.7101 of 16 Texas

12

Administrative Code. This review involves examination of the statutory requirements for processing a utility's application to amend its tariff or rate schedule under the GRIP statute and rule, and whether the GRIP filing satisfies those requirements. This construction effectuates the statutory language and furthers the purpose of the GRIP statute to create a streamlined procedure for recovery of capital as an incentive for gas utilities to invest in pipeline infrastructure. Therefore, we affirm the judgment of the court of appeals.[6]

_____
Dale Wainwright
Justice

OPINION DELIVERED: November 18, 2011

---

[6] The court of appeals held that the GRIP rule subsections 7.7101(g)(2)(B) and (g)(2)(C) are only void to the extent the Commission attempts to reject a GRIP filing over which it holds regulatory authority for any reason other than failure to comply with the statutory requirements. 309 S.W.3d 563, 576. Because the regulatory authorities in this appeal are municipalities, we do not address the validity of these provisions in the GRIP rule that apply when the Commission acts as the regulatory authority.

13