In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00076-CV

_____

**THE CITY OF CLEVELAND, NIKI COATS, IN HIS OFFICIAL CAPACITY AS MAYOR OF THE CITY OF CLEVELAND AND ANGELA SMITH, IN HER OFFICIAL CAPACITY AS CITY SECRETARY OF THE CITY OF CLEVELAND, Appellants**

**V.**

**KEEP CLEVELAND SAFE, Appellee**

**On Appeal from the 253rd District Court**
**Liberty County, Texas**
**Trial Cause No. CV1307627**

**OPINION**

On December 16, 2013, Keep Cleveland Safe ("KCS" or "Plaintiff") filed an "Original Petition and Application for Temporary Injunction and/or Permanent Injunction" (hereinafter "Lawsuit") to stop the City of Cleveland ("the City") from presenting an issue to the people for a vote at the May 10, 2014 election. The Lawsuit relates to the efforts of certain citizens calling for the City to allow the

1

citizens of the City to vote on a proposed charter amendment regarding a prohibition on the use of photographic traffic signal enforcement systems or red light cameras ("Red Light Petition").[1] The City, Niki Coats, in his official capacity as Mayor of the City, and Angela Smith,[2] in her official capacity as City Secretary of the City (collectively "Defendants" or "Appellants"), appeal the trial court's Final Judgment and permanent injunction enjoining the City from holding an election on the Red Light Petition. We dissolve the permanent injunction, reverse the judgment of the trial court, and dismiss the case.

BACKGROUND

The City is incorporated under Texas law and operates as a home-rule municipality. *See* Tex. Const. art. XI, § 5; *see also* Tex. Loc. Gov't Code Ann. § 51.072 (West 2008); Cleveland, Tex., Home Rule Charter (2014).[3] In October

---

[1] On August 2, 2013, the City Secretary received a "Petition to Ban Red Light Cameras" but returned it because the document "did not meet the requirements of the City Charter or State Law[.]" Another petition was filed on August 19, 2013, the Red Light Petition at issue in this appeal.

[2] According to Appellants, Kelly McDonald was the City Secretary for the City at the time the underlying lawsuit was filed. During the litigation Angela Smith replaced McDonald as City Secretary. Accordingly, we have automatically substituted Smith in place of McDonald. *See* Tex. R. App. P. 7.2(a).

[3] In our appellate record, we find a Cleveland Home Rule Charter "as revised through May 1, 1993." Additionally, there is a Cleveland Home Rule Charter, as amended May 20, 2014. At the time of trial, the 2014 Cleveland

2

2009, the Cleveland City Council ("the City Council") passed an ordinance authorizing and implementing a photographic traffic signal enforcement program. *See* Tex. Transp. Code Ann. § 707.002 (West 2011).

On August 19, 2013, the City Secretary received a document entitled, "Petition to Ban Red Light Cameras[.]" The Red Light Petition stated the following:

> To the Mayor and City Council of the City of Cleveland ("City"), we, the undersigned voters of the City of Cleveland, Texas, under Section 9.004 of the Local Government Code, hereby petition for an election to amend the Charter of the City of Cleveland to add the following as a separate section to our Charter to read as follows:
>
> The City of Cleveland shall not use photographic traffic signal enforcement systems to civilly, criminally, or administratively enforce any state law or City Ordinance against the owner or operator of a vehicle operated in violation of a traffic control signal, specified by Section 544.007(d) of the Texas Transportation Code, nor shall it collect any money from any recipient of a Notice of Violation issued, in whole or in part, in connection with the use of a photographic traffic signal enforcement system.

The Red Light Petition included a statement that each person who signed the Red Light Petition "must be a registered voter and reside in the City of Cleveland[.]" According to the language in the Red Light Petition, the petitioners filed it to

---

Charter was admitted into evidence without objection. KCS attached a copy of the 2014 Charter in its appendix to Appellee's brief. The 2014 Charter contains amendments to the 1993 Charter. We conclude that the differences are not material to our analysis and therefore we cite to the 2014 Charter.

require the City to place the matter on the ballot for an election to amend the Cleveland City Charter ("City Charter") pursuant to section 9.004 of the Texas Local Government Code. Section 9.004 provides in part as follows:

> (a) The governing body of a municipality on its own motion may submit a proposed charter amendment to the municipality's qualified voters for their approval at an election. The governing body shall submit a proposed charter amendment to the voters for their approval at an election if the submission is supported by a petition signed by a number of qualified voters of the municipality equal to at least five percent of the number of qualified voters of the municipality or 20,000, whichever number is the smaller.

Tex. Loc. Gov't Code Ann. § 9.004(a) (West 2008).

On August 29, 2013, the City Council passed Ordinance No. 1029, wherein the City Council accepted the Red Light Petition and stated in part that "[t]he City Council finds and declares that the proposed charter amendment submitted by the voters in the Petition to Ban Red Light Cameras shall be submitted to the City's qualified voters at the next municipal general election on May 10, 2014." The ordinance also directed the City Secretary "to publish notice of the election in accordance with Section 9.004(c) of the Texas Local Government Code[]" and prepare the ballots for the election.

On December 16, 2013, KCS filed this Lawsuit. In pleadings filed by KCS in the Lawsuit, KCS described itself as "a specific-purpose political action committee created to oppose efforts to conduct a public referendum on the

4

automated photographic traffic signal enforcement program that already has been properly enacted by the Cleveland City Council."[4] KCS requested that the trial court "declare that the enactment and repeal of local legislation relating to the use of photographic traffic signal enforcement systems has been withdrawn from the field in which the initiative/referendum process operates because the Transportation Code grants the exclusive authority to implement these systems to the 'governing body of a local authority.'" KCS alleged that the City Council

[4] Section 251.001(13)(A)(ii) of the Texas Election Code provides that a "'[s]pecific-purpose committee' means a political committee that does not have among its principal purposes those of a general-purpose committee but does have among its principal purposes . . . supporting or opposing one or more . . . measures, all of which are identified[.]" Tex. Elec. Code Ann. § 251.001(13)(A)(ii) (West 2010). According to Exhibit E, filed into the record at trial by KCS, which appears to be a Form STA, "Appointment of A Campaign Treasurer By A Specific-Purpose Committee," Keep Cleveland Safe, is a Specific-Purpose Committee, with an address of 2668 Highway 36S, #288, Brenham, Texas 77833, and Andy Taylor (trial counsel of record for KCS) appointed himself to act as treasurer of KCS. Page two of Exhibit E lists the committee's purpose as "oppose measure[,]" of an "unknown" ballot identification, with an election date of "5/14/2014," to "oppose measure" with a description of "[o]ppose a City Charter Amendment that will ban red light cameras in Cleveland, Texas." According to other exhibits also filed into the record by KCS, Andy Taylor is also counsel of record for American Traffic Solutions, and American Traffic Solutions has a contract with the City to install red light camera systems, operate each camera system, and process violations for a fixed monthly fee and surcharge for excess use. The City also argued in the trial court that KCS failed to plead facts demonstrating that it has standing to bring the suit, that KCS or its members are not taxpayers of the City, and that KCS or its members have not suffered any particularized injury from the City's ordinance calling the election on the Red Light Petition.

5

enacted an ordinance implementing the automated photographic traffic signal enforcement program, and the exercise of that authority had been "solely granted to the City Council by the Legislature, [and] should not be subject to revocation by referendum." KCS asked the trial court to declare that the ordinance calling for the May 10, 2014 election "regarding the attempted revocation of the [photographic traffic signal enforcement program], whether it is called an initiative or a charter amendment or a referendum, is void and of no legal effect because it falls outside the power of initiative/referendum reserved for the citizen voters of the City." KCS also sought a temporary and permanent injunction to enjoin the Defendants from conducting the May 2014 election as to the proposed charter amendment and to declare that the ordinance calling the election is inconsistent with section 707.002 of the Transportation Code.

On January 8, 2014, the Defendants filed a "Plea to the Jurisdiction or Alternatively, Original Answer[.]" The Defendants alleged that the trial court lacked jurisdiction and (1) KCS failed to plead facts demonstrating that KCS had standing to bring the suit, (2) KCS's claim for relief was not ripe and if the charter amendment election KCS sought to enjoin failed, the issue would become moot, (3) Defendants are entitled to governmental immunity, (4) the Real Party has been omitted and the "true name(s)" of Plaintiff should be substituted for Plaintiff, (5)

KCS failed to plead facts showing it is entitled to sue or be sued or has the authority to bring the suit against the Defendants, (6) the petitioner for the charter amendment was a necessary party to the suit, and (7) KCS failed to allege facts showing that the City Council lacked the authority to call an election to amend the City Charter.[5]

On February 11, 2014, the City Council adopted Ordinance No. 1043 calling an election for May 10, 2014, for the purpose of electing individuals to certain City Council positions and also for accepting or rejecting a number of proposed charter amendments, including "Proposition No. Four[,]" the proposed charter amendment outlined in the Red Light Petition. On February 13, 2014, KCS filed its response to the Defendants' plea to the jurisdiction.

On February 19, 2014, the trial court conducted an evidentiary hearing on KCS's request for a temporary injunction. On March 11, 2014, the trial court entered an order granting KCS a temporary injunction, enjoining Appellants "from conducting an election on the [Red Light] Petition[,]" and setting the matter for trial.

On October 1, 2014, the trial court conducted a bench trial. All parties appeared through their attorneys and presented documentary evidence and

---

[5] The Defendants also asserted a general denial.

7

arguments, without presenting any testimony from witnesses. On November 24, 2014, the trial court entered an order denying the Defendants' plea to the jurisdiction. The trial court then entered a Final Judgment granting the relief as requested by KCS, finding "that Plaintiff is entitled to permanent injunctive relief." The trial court issued a permanent injunction, granted declaratory relief, and entered a Final Judgment with the following specific findings:

1. A document entitled, "The Petition to Ban Red Light Cameras" was submitted to the Cleveland City Secretary on August 19, 2013 (the "Petition"). The Petition seeks to mandate the City Council of the City of Cleveland, Texas, pursuant to Section 9.004 of the Texas Local Government Code, to call an election for the purpose of amending the Charter of the City of Cleveland (the "Cleveland Charter"). The Petition does not comply with Section 8.05 of the Cleveland Charter. Specifically, Section 8.05 of the Cleveland Charter sets forth the exclusive procedures under which the Charter may be amended. That provision is valid and enforceable as a matter of law. Section 9.004 of the Texas Local Government Code does not preempt Section 8.05 of the Cleveland Charter.

2. The Petition does not comply with any other provision of the Cleveland Charter, including Sections 9.01 and 9.02, which define the initiative and referendum powers of the citizens of Cleveland. The Petition does not constitute an initiative. The Petition does not constitute a referendum.

3. Because the Petition was not in compliance with the Cleveland Charter, the Cleveland City Council lacked the authority to call an election on it. Accordingly, Ordinance 1029, passed by the Cleveland City Council on August 29, 2013, and calling for an election on the Petition (the "First Ordinance") is void and unenforceable as a matter of law. Likewise, Proposition (or measure) 4 of Section 4 of Ordinance 1043, which calls for an election on the Petition, and which

8

passed by the Cleveland City Council on February 11, 2014 (the "Second Ordinance"), is also void and unenforceable as a matter of law.

4.      The First Ordinance and Proposition 4 of the Second Ordinance are also void and unenforceable as a matter of law because the Texas Legislature has expressly delegated the exclusive authority to implement red-light-camera enforcement programs to the governing body of a local government, in this instance, the Cleveland City Council. TEX. TRANSP. CODE § 707.002. That exclusive grant of power removes the subject of red-light-camera enforcement programs from the field in which citizen petitions can operate. The subject matter of the Petition, therefore, falls outside the field for which the initiatory process exists. Accordingly, the Petition did not authorize the Cleveland City Council to call for an election and the First Ordinance and Proposition 4 of the Second Ordinance are void and unenforceable as a matter of law.

5.      The Petition also seeks to render inoperative and to temporarily prevent the adoption of any subsequent City Council ordinance that seeks to ban by charter amendment any red-light-camera enforcement program. Initiative, referendum and charter amendment powers do not permit the repeal of prohibition of a measure that protects the health, safety and welfare of all citizens at the behest of individual voters. For this reason, the Cleveland City Council was not authorized to call for an election on the Petition. Accordingly, the First Ordinance and Proposition 4 of the Second Ordinance, calling for an election on the Petition, are void and unenforceable as a matter of law.

6.      The First Ordinance and Proposition 4 of the Second Ordinance, if permitted to stand for the purpose of calling an election, would violate or threaten a violation of the Election Code, causing harm or the danger of harm to Plaintiff. Therefore, under Section 273.081 of the Election Code, injunctive relief is appropriate to prevent a violation of the Election Code from continuing or occurring and causing this harm.

9

7. This Court issued a preliminary injunction in this matter on March 6, 2014. As a result, neither the First Ordinance nor Proposition 4 of the Second Ordinance was placed on the ballot for the City of Cleveland's election which was held on May 10, 2014. Although the Defendants contend that the cancellation of the election causes this case or controversy to be moot, the "capable of repetition yet evading review" exception doctrine applies here because the challenged act was of such short duration that Plaintiff could not obtain review before the issue became moot. Where, as here, there is a reasonable expectation that the same action will occur again if the issue is not considered, the Court finds the matter to not be moot.

. . .

8. The Court hereby enjoins Defendants The City of Cleveland, Texas, Niki Coats, Mayor, and Kelly McDonald, City Secretary, and their officers, agents, servants, employees, attorneys, and those in active concert or participation with them, from conducting an election on the Petition pursuant to the First Ordinance or Proposition 4 of the Second Ordinance.

9. It is further ordered, adjudged, and decreed that all relief requested in this case not expressly granted is denied. This judgment finally disposes of all parties and all claims and is appealable.

The Defendants timely filed a Request for Findings of Fact and Conclusions of Law and a Motion for New Trial. The Motion for New Trial was overruled by operation of law. On January 13, 2015, the trial court entered Findings of Fact and Conclusions of Law, in relevant part as follows: the trial court has subject matter over all the parties and all of the KCS's claims; Defendants are not immune from the suit and that KCS's claims are not moot because the controversy and the facts trigger the "capable of repetition yet evading review" exception to the mootness

10

doctrine; the Red Light Petition does not comply with Section 8.05 or any other provision of the City of Cleveland Charter; Section 9.004 of the Texas Local Government Code does not preempt Section 8.05 of the City of Cleveland Charter; the Red Light Petition does not constitute an initiative or referendum; Ordinances 1029 and 1043 are void and unenforceable as a matter of law; section 707.002 of the Transportation Code delegates the exclusive authority to implement red-light-camera enforcement programs to the Cleveland City Council and, therefore, the subject is removed from the field in which citizen petitions can operate; where, as here, the matter is not moot because the record shows that despite the cancellation of the election there is a reasonable expectation that the same action will occur again if the issue is not resolved in this proceeding; and the trial court permanently enjoined the Defendants and their officers, servants, employees, attorneys and those in active concert or participation with them, from conducting an election pursuant to the First Ordinance and Proposition 4 of the Second Ordinance. The Defendants timely filed a notice of appeal.

ISSUE ON APPEAL

In one issue the Appellants contend that the trial court erred in permanently enjoining the City from conducting an election on the proposed charter amendment because the trial court lacked jurisdiction, and because the subject has not been

11

removed from the referendum and initiative power of the people. Appellants contend that under the separation of powers doctrine, the district court should not have interfered with the elective process. Appellants argue that the City Council, having received and accepted a petition that met the requirements of section 9.004(a) of the Texas Local Government Code, had a duty to place the matter on the ballot, the City Council followed proper procedure and fulfilled its duty by passing two ordinances calling for a charter amendment election as requested in the Red Light Petition, and the trial court erred in interfering with the elective process. Appellants contend that, even if the City had not received a valid petition demanding an election on the proposed charter amendment, the City Council had the authority pursuant to section 9.004(a) to call for an election on the proposed amendment. According to Appellants, there is no conflict between section 8.05 of the City Charter and section 9.004(a) of the Texas Local Government Code. Appellants assert that the district court was without jurisdiction to enjoin future elections, the proposed charter amendment is not inconsistent with Chapter 707 of the Transportation Code, and there is no language in section 707.002 that expressly withdraws the use of photographic traffic enforcement systems from the field in which an initiative or referendum may operate. Accordingly, Appellants contend that the trial court erred in granting KCS a permanent injunction, in declaring the

12

ordinances calling for an election void and unenforceable, and in enjoining the City from placing the matter on a ballot for the people to decide whether the City should use red light cameras.

## DISCUSSION

We construe city charters according to the rules governing the interpretation of statutes generally. *City of Houston v. Todd*, 41 S.W.3d 289, 297 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *Rossano v. Townsend*, 9 S.W.3d 357, 363 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Willman v. City of Corsicana*, 213 S.W.2d 155, 158 (Tex. Civ. App.—Waco 1948), *aff'd*, 216 S.W.2d 175 (1949). Statutory construction is a question of law that we review de novo. *Atmos Energy Corp. v. Cities of Allen*, 353 S.W.3d 156, 160 (Tex. 2011); *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). When construing a statute, our primary task is to give effect to the Legislature's expressed intent. *Atmos Energy Corp.*, 353 S.W.3d at 160; *Iliff v. Iliff*, 339 S.W.3d 74, 79 (Tex. 2011). We rely on the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008).

A home-rule city derives its powers from the Texas Constitution and from the people. *See* Tex. Const. art. I, § 2; *id.* art. XI, § 5; *see also* Tex. Loc. Gov't Code Ann. § 51.072. As a home-rule city, the City of Cleveland possesses "the full power of self[-]government and look[s] to the Legislature not for grants of power, but only for limitations on [its] power." *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490-91 (Tex. 1993). We presume a home-rule city charter provision or ordinance is valid, and the courts cannot interfere unless the provision is unreasonable and arbitrary, amounting to a clear abuse of municipal discretion. *See City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (Tex. 1982); *Todd*, 41 S.W.3d at 295. However, if a city charter provision or ordinance attempts to regulate a subject matter that has been preempted by a state statute, the charter provision or ordinance is unenforceable to the extent it conflicts with the state statute. *See Dallas Merchant's & Concessionaire's Ass'n*, 852 S.W.2d at 491. If the Legislature decides to preempt a subject matter, it must do so with "unmistakable clarity." *Id.* Accordingly, courts will not hold a state law and a city charter provision repugnant to each other if they can reach a reasonable construction leaving both in effect. *Id.*

14

Initiative and referendum powers are reserved for use by local voters of home-rule cities. *See Glass v. Smith*, 244 S.W.2d 645, 636 (Tex. 1951); *Taxpayer's Ass'n of Harris Cty. v. City of Houston*, 105 S.W.2d 655, 657 (Tex. 1937). The initiative and referendum process allows the people to have direct participation in lawmaking. *Coalson v. City Council of Victoria*, 610 S.W.2d 744, 747 (Tex. 1980). "[T]he power of . . . referendum . . . is the exercise by the people of a power reserved to them," and charter provisions should be "liberally construed" in favor of this power. *In re Woodfill*, 470 S.W.3d 473, 480 (Tex. 2015) (per curiam) (quoting *Taxpayer's Ass'n of Harris Cty.*, 105 S.W.2d at 657 (The power of initiative and referendum "is the exercise by the people of a power reserved to them, and not the exercise of a right granted.")). However, a city charter and the power of the people to exercise the initiative or referendum process cannot be inconsistent with the Constitution of the State and general laws of the State. Tex. Const. art. XI, § 5(a) ("no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State"); *see Glass*, 244 S.W.2d at 649 ("the field in which the initiatory process is operative is not unlimited"). State law prohibits a city charter from being altered, amended, or repealed more than

once every two years. Tex. Const. art. XI, § 5(a) ("no city charter shall be altered, amended or repealed oftener than every two years").

The Legislature may remove by general law a subject matter from the initiatory process. *See Quick v. City of Austin*, 7 S.W.3d 109, 124 (Tex. 1999); *Glass*, 244 S.W.2d at 649. And, the initiatory process may be limited by a city charter to "legislative matters." *Glass*, 244 S.W.2d at 649. Any rights conferred or claimed under a charter, including the right of the people to exercise the initiatory process, remain subordinate to the provisions of the Constitution and general laws of this State. *Id*. Nevertheless, charter provisions should be liberally construed in favor of the power of initiative and referendum, and any limitation on the power of the people to exercise the initiative or referendum process will not be implied unless the provisions of the charter are clear and compelling. *Quick*, 7 S.W.3d at 124; *Glass*, 244 S.W.2d at 649; *In re Arnold*, 443 S.W.3d 269, 275 (Tex. App.— Corpus Christi 2014, orig. proceeding).

<u>Jurisdiction and Standard of Review</u>

As a general rule, the "separation of powers" doctrine[6] and the judiciary's "deference to the legislative branch" require the judicial branch to refrain from

---

[6] Our State Constitution expressly includes a separation of powers provision:

16

interfering in the elective process. *Blum v. Lanier*, 997 S.W.2d 259, 263 & n.6 (Tex. 1999) (citing, among other cases, *City of Austin v. Thompson*, 219 S.W.2d 57, 59 (Tex. 1949) (district court is without authority to enjoin even a void election) and *Ex parte Barrett*, 37 S.W.2d 741, 742 (Tex. 1931) (orig. proceeding) (injunction against holding an election is outside the general scope of judicial power). "Texas law does not allow a trial court to enjoin an election ordered by a co-equal branch of government, even if that election is subject to being later determined that it was conducted in violation of Texas law." *Rodriguez v. Beaumont Indep. Sch. Dist.*, 413 S.W.3d 524, 535 (Tex. App.—Beaumont 2013, no pet.).

Similarly, courts should not issue advisory opinions regarding the legality of a proposed law that is to be submitted to the electorate because such a matter would generally not be ripe for declaratory judgment if the action is filed before

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Tex. Const. art. II, § 1. *See generally Clinton v. Jones*, 520 U.S. 681, 699 (1997) ("The doctrine of separation of powers is concerned with the allocation of official power among the three coequal branches of our Government.").

the election is held. *City of Garland v. Louton*, 691 S.W.2d 603, 605 (Tex. 1985); *Coalson*, 610 S.W.2d at 747; *see also Gen. Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990) ("[T]he judicial power does not embrace the giving of advisory opinions."). District courts generally should refrain from interfering with the election process before the matter is submitted to the electorate, because it does not present a justiciable question. *See Rodriguez*, 413 S.W3d at 535 (citing *Blum*, 997 S.W.2d at 263 & n.6).

The separation of powers also limits the ability of a court to issue a permanent injunction that enjoins a City from exercising the powers inherent in the legislative process. We have three separate branches of government, and "no one of them, and least of all the judicial department, should attempt to exceed the limits set about it and invade by such interference the domain of another." *Dallas v. Couchman*, 249 S.W. 234, 239 (Tex. Civ. App.—Dallas 1923, writ ref'd). The ability of a court to permanently enjoin a City from conducting an election is generally prohibited because it violates the separation of powers between the legislative and judicial branch. *See Blum*, 997 S.W.2d at 263; *Coalson*, 610 S.W.2d at 747. Similarly, in *Couchman*, the court discussed the impropriety of enjoining a legislative body from enacting ordinances:

> As before stated, the record clearly establishes that the ordinance has not been finally enacted, and that it is still pending before the board of

18

commissioners, to be finally considered and acted upon. The decree of the court, therefore, enjoins a legislative act of the board of commissioners. It is well settled . . . that the enactment of a void ordinance will not be enjoined, although its invalidity clearly appears, unless it also clearly appears that the mere enactment of the ordinance of itself will work irreparable injury without the intervention of some wrongful act under its authority.

. . .

Being lawfully clothed with legislative power, they must be left in the exercise of that power to the enactment of ordinances according to the dictates of their legislative judgment, regardless of whether or not any particular enactment may be valid or invalid. Especially in such instances as where the enactment of their invalid ordinances of itself does not work an irreparable injury without the intervention of some act done under or by virtue of it.

*Couchman*, 249 S.W. at 239, 240; see also *City of Rusk v. Cox*, 665 S.W.2d 233, 237 (Tex. App.—Tyler 1984, writ ref'd n.r.e.) (finding an injunction necessary to provide relief against enforcement does mean that a court may enjoin a city from enacting future zoning ordinances); *City of Universal City v. City of Selma*, 514 S.W.2d 64, 73 (Tex. Civ. App.—Waco 1974, writ ref'd n.r.e.) (The proper practice is to wait until the ordinance is passed and the city attempts to operate under it before seeking relief against the City.); *City of Monahans v. State ex rel. Cook*, 348 S.W.2d 176, 179 (Tex. Civ. App.-El Paso 1961, writ ref'd n.r.e.) ("[T]he restraining of the passage of an ordinance is a legislative act, and such restraint cannot be exercised by the courts."). Moreover, to be entitled to a permanent

19

injunction against a municipality in what are inherently legislative tasks, the party

must show irreparable injury:

> More is required than the mere enactment of the void ordinance, even one invalid on its face; it must also clearly appear "that the mere enactment of the ordinance of itself will work irreparable injury without the intervention of some wrongful act under its authority." [*Couchman*, 249 S.W. at 239]; *Spinks Indus., Inc. v. City of Fort Worth*, 452 S.W.2d 799, 800 (Tex. App.—Fort Worth 1970, no writ). The fact that an ordinance is void alone works no injury. *Id*. Only after acts are impending or steps are already being taken to directly cause harm does the basis for relief exist, and only then may the authority of a court be invoked to restrain the injury. *Couchman*, 249 S.W. at 239; *see Monahans*, 348 S.W.2d at 179. Where passage of the ordinance will cause no irreparable harm or injury beyond the power of redress by subsequent judicial proceedings, judicial interference is not warranted, even if the proposed ordinance disregards some constitutional restraint. *City of Houston v. Houston Gulf Coast Bldg. and Constr. Trades Council*, 697 S.W.2d 850, 852 (Tex. App.—Houston [1st Dist.] 1985, no writ); *see A&A Constr. Co. v. City of Corpus Christi*, 527 S.W.2d 833, 835 (Tex. App.—Corpus Christi 1975, no writ).

*City of Port Isabel v. HP Pinnell*, 207 S.W.3d 394, 418 (Tex. App.—Corpus

Christi 2006, no pet.).

KCS argues that the trial court had jurisdiction to issue a permanent

injunction and declaratory judgment in this case before the proposition was

submitted to the electorate because the initiative relates to a matter that has been

exclusively withdrawn from the field in which the initiatory process may operate

and therefore the issue presents a justiciable question. The City argued in the trial

20

court that it lacked jurisdiction over the matter because the matter was moot and there was no justiciable controversy.

## Glass, Coalson, and Blum

KCS and the City both cite to and rely, in part, upon three Texas Supreme Court cases in their briefs, *Glass*, *Coalson*, and *Blum*.[7] We agree that all three cases are instructive. Therefore, before proceeding any further, we discuss each of these cases in more detail.

*Glass* involved several members of the City of Austin fire department who had signed an initiative petition to call an election on a proposed ordinance pertaining to several employment matters affecting firefighters and police. 244 S.W.2d at 647. The City Council of Austin refused to place the matter on the ballot and the members of the fire department sought relief in the trial court. The trial court granted the writ of mandamus as prayed for and that judgment was affirmed by the Court of Civil Appeals. *Id.* at 647. The Texas Supreme Court affirmed the writ of mandamus requiring city authorities to hold an election after the requisite number of signatures was obtained. *See id.* at 648, 653-54. The Court held that the

---

[7] KCS also references several cases from other states in support of its argument that the trial court had jurisdiction to decide whether the matter had been removed from the initiative process. We need not address the out of state cases cited by KCS as they are not controlling over the decisions of this Court. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993).

21

plaintiffs, as petition signers, had a justiciable interest in their proposed ordinance being submitted to the people for a vote. *Id.* at 648. The Court noted,

> Once the people have properly invoked their right to act legislatively under valid initiative provisions of a city charter and the subject matter of the proposed ordinance is legislative in character and has not been withdrawn or excluded by general law or the charter, either expressly or by necessary implication, from the operative field of initiative, members of the City Council and other municipal officers should be compelled by the courts to perform their ministerial duties so as to permit the legislative branch of the municipal government to function to the full fruition of its product, though that product may later prove to be unwise or even invalid.

*Id.* at 654. The Court stated that

> While we do not agree with the full import of the rule announced by the Court of Civil Appeals, we do agree with its conclusion that respondents being otherwise entitled to have the initiative election called and held, cannot be defeated in that right by the refusal of petitioners to perform purely ministerial duties on the ground that in their opinion the ordinance would be invalid if adopted. We believe also that to determine whether respondents are otherwise entitled to have the election called and held the courts inquiry should be on a broader basis than that established by the opinion of the Court of Civil Appeals. As heretofore[] indicated, the inquiry of the Court of Civil Appeals extended only to a determination of whether the subject matter of the ordinance was legislative in character. But to entitle respondents to a writ of mandamus on the ground that they have a legal right to have the election called and held and that petitioners are under a legal duty to order and to hold it, it is not enough that the subject matter of the proposed ordinance be legislative in character but it must also appear that the subject matter of the ordinance has not been withdrawn from the field in which the initiatory process is operative.

22

*Id.* at 648. As stated above, a governing body cannot defeat the right to an initiative election by refusing to "perform purely ministerial duties on the ground that in [its] opinion the ordinance would be invalid if adopted." *Id*. However, mandamus may issue only where the "subject matter of the proposed ordinance [is] legislative in character" and has not been "withdrawn from the field in which the initiatory process is operative." *Id*. The subject matter of the proposed ordinance may have been "withdrawn, expressly or by necessary implication, by either the general laws or the city charter." *Id*. at 650. "Any rights conferred by or claimed under the provisions of a city charter, including the right to an initiative election, are subordinate to the provisions of the general law." *Id*. at 649. Therefore, *before mandamus can issue*, the appellate court must determine that the subject matter of the proposed ordinance has not been withdrawn from the field in which the initiatory process is operative. *Id.*

Almost thirty years after *Glass*, the Texas Supreme Court issued its opinion in *Coalson*. In *Coalson*, the relators sought a writ of mandamus to order the Victoria City Council to submit a proposed charter amendment to the public for a vote. 610 S.W.2d at 745. The Texas Supreme Court noted that the relators complied with article 1170, the predecessor of section 9.004 of the Texas Local Government Code, and the Court ordered the City to proceed with the election. *See*

23

*id.* at 745-46. Notably, much like KCS does in the case at bar, the *Coalson* respondents argued that they instituted the suit for declaratory judgment seeking adjudication that the relators' proposed charter amendment had been withdrawn from the field in which the initiatory process is operative and therefore they should be allowed to obtain a declaratory judgment prior to having the measure submitted for a vote. *See id.* at 746. The Court explained, however, that

> The declaratory judgment action was prematurely filed. The election process had been lawfully put in motion and the declaratory judgment action was improperly used as a vehicle to frustrate the process. The declaratory judgment suit, at this stage of the proceedings, seeks an advisory opinion. The election may result in the disapproval of the proposed amendment. District courts, under our Constitution, do not give advice nor decide cases upon speculative, hypothetical, or contingent situations. The election will determine whether there is a justiciable issue, at which time the respondents' complaints against the validity of the initiatory process under article 1170 may be determined by the trial court.

*Id*. at 746-47 (citations omitted). The City Council's compliance with the law was ministerial and "[t]he City Council's refusal to submit the proposed amendments to the vote of the people thwarts not only the legislature's mandate but the will of the public." *Id.* at 747. Accordingly, a writ of mandamus was ordered requiring the City to proceed with the election. *Id*.

The Texas Supreme Court issued its decision in *Blum* in 1999. Again, on mandamus review, the Court examined a voter initiated petition drive to propose

24

an amendment to the City of Houston charter ending "preferential treatment" in public employment and contracting. 997 S.W.2d at 260, 261. After receiving a citizen initiated petition, the Houston City Council adopted an ordinance calling for an election on the proposed amendment. *Id.* at 261. However, the plaintiff, Blum, objected to the description of the amendment to be used on the ballot, and filed suit to enjoin the city from using "vague [and] indefinite" or misleading language on the ballot "to describe the proposed amendment." *Id.* The trial court concluded that it lacked subject matter jurisdiction to issue an injunction but concluded that it had jurisdiction to decide the mandamus, and denied mandamus relief. *Id.* On appeal, the City argued that the matter was moot because the election had begun. *Id.* The Houston Court of Appeals concluded that the matter was not moot, but that Blum lacked standing to obtain injunctive relief and affirmed the trial court on that basis. *Id.* The City argued that the injunction against the City might cause the upcoming election to be postponed. *Id*. at 263.

The Texas Supreme Court reversed and remanded the case to the trial court for further proceedings. The Court explained that although an injunction that delays the election would be improper, an injunction that "facilitates the elective process may be appropriate." *Id*. "In short, if the matter is one that can be judicially resolved in time to correct deficiencies in the ballot without delaying the election,

then injunctive relief may provide a remedy that cannot be adequately obtained through an election contest." *Id*. at 263-64.

Accordingly, the Court held that the plaintiff had standing to seek injunctive relief forbidding the City's use of misleading language describing the proposed amendment. *See id.* at 260-65. Furthermore, relying in part on *Glass*, the Court concluded that petition signers, as sponsors of an initiative, possess a justiciable interest in the valid execution of the election that is distinct from the interest possessed by the general public. *Id.* at 262 (citing *Glass*, 244 S.W.2d at 648, 653-54). Finally, the Court also rejected the City's argument that the matter was moot. *Id*. at 264. As noted by the Court, the parties reported to the Court that the proposed charter amendment failed, Blum had amended his petition to add an election contest, and the trial court advised that it was going to sustain the election contest. *Id*. The Court stated that "[b]ecause the City controls the proposition language and to some extent may also dictate the amount of time the initiative sponsors will have to seek judicial relief prior to the election, a repetition of the events in this case is possible." *Id*. Therefore, the "capable of repetition yet evading review" doctrine applied. *Id*.

<u>Application to the Facts</u>

The case now before us, unlike *Glass*, *Coalson*, and *Blum*, is not a mandamus action. We are not being asked to review an interlocutory temporary injunction, nor does the injunction issued in the case at bar facilitate the language to be used in a proposed charter amendment for an upcoming election, as in *Blum*. In fact, the time set for the May 2014 election had already passed prior to trial. And, the sole relief that KCS sought in its Original Petition was for the trial court to grant an injunction to enjoin the City from "conducting the previously described election in May 2014" and "declare that the Ordinance calling the election is inconsistent with state law, specifically, Chapter 707.002 . . . and is therefore illegal and void" and that the "temporary injunction be made a permanent injunction[.]" KCS, is a specific-purpose committee, formed solely to oppose the charter amendment set for the May 2014 election, and by virtue of the Texas Constitution the City was prohibited from having another charter amendment election for two years.

The mere possibility that a different Petition for a Red Light Camera amendment to the charter could be submitted in the future by the citizens of Cleveland, or that KCS might again file papers to form another specific-purpose committee to challenge such hypothetical petition, or that the Cleveland City

27

Council might pass a similar ordinance calling for another charter amendment at a future election is not sufficient to satisfy the "capable of repetition, yet evading review" narrow exception to the mootness doctrine.

As a general rule, a case is determined to be moot "'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)). Courts are precluded from deciding a moot controversy. *OXY U.S.A., Inc*., 789 S.W.2d at 570-71. Texas courts recognize two exceptions to the mootness doctrine: 1) "capable of repetition, yet evading review", and 2) collateral consequences doctrine. *Id.* at 571. The Supreme Court has explained that "in the absence of a class action, the 'capable of repetition, yet evading review' doctrine [i]s limited to the situation where two elements combine[]: (1) the challenged action [i]s in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy*, 455 U.S. at 482 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 148 (1975) and citing *Ill. Elections Bd. v. Socialist Workers Party*, 440 U.S. 173, 187 (1979); *Sosna v. Iowa*, 419 U.S. 393 (1975)); *see also Williams v. Huff*, 52 S.W.3d 171, 184 (Tex. 2001). The mere physical or theoretical possibility

28

that the complaining party may be subjected to the same action again is not sufficient to satisfy the test. *See Trulock v. City of Duncanville*, 277 S.W.3d 920, 924 (Tex. App.—Dallas 2009, no pet.) (citing *Murphy*, 455 U.S. at 482).

The Texas Supreme Court recently applied the "capable of repetition yet evading review" doctrine in *Matthews v. Kountze Independent School District*, 484 S.W.3d 416 (Tex. 2016). In *Matthews*, middle school and high school cheerleaders, through their parents, sued the Kountze Independent School District (the District) after the District prohibited the cheerleaders from displaying banners displaying religious messages at school-sponsored events. *Id.* at 417. The District filed a plea to the jurisdiction based on governmental immunity and lack of standing, and later supplemented the plea alleging the claim was moot after the District adopted Resolution and Order No. 3. The Resolution and Order No. 3 provided that the District is "not required to prohibit messages on school banners . . . that display fleeting expressions of community sentiment solely because the source or origin of such message is religious," but the District "retains the right to restrict the content of the school banners." *Id.* The trial court denied the District's plea, and the District filed an interlocutory appeal. *Id.*

Without addressing the governmental immunity or standing issues, this Court held that the cheerleaders' claims for declaratory and injunctive relief were

moot because the District voluntarily discontinued its prohibition on the display of banners containing religious messages at school-sponsored events. *See generally Kountze Indep. Sch. Dist. v. Matthews*, 482 S.W.3d 120 (Tex. App.—Beaumont 2014).

On petition for review to the Texas Supreme Court, the Court noted that "The District contends that the cheerleaders are only challenging a discrete action by the District—the District's September 18, 2012, announcement that 'student groups [are not allowed] to display any religious signs or messages at school sponsored events.'" 484 S.W.3d at 418. In granting the cheerleaders' petition for review and reversing the Ninth Court of Appeals decision, the Court determined that, even if the cheerleaders' claims were limited to the District's discrete action on September 18, 2012, the case was not moot. *Id.* at 418-20. The Court noted that the District's voluntary discontinuation of the prohibition on the cheerleaders from displaying religious signs or messages on banners at school-sponsored events "hardly makes 'absolutely clear' that the District will not reverse itself after this litigation is concluded,'" and that "the District has never expressed the position that it could not, and unconditionally would not," reinstate the prohibition. *Id.* at 418-19. The Court concluded that "Resolution and Order No. 3 only states the District is not *required* to prohibit the cheerleaders from displaying such banners,

and reserves to the District unfettered discretion in regulating those banners—including the apparent authority to do so based on their religious content." *Id.* at 420. According to the Court, the case is not moot because the District's voluntary abandonment provides "no assurance that the District will not prohibit the cheerleaders from displaying banners with religious signs or messages at school-sponsored events in the future." *Id.* at 419-20; *see also Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841 (Tex. App.—Austin 2002, pet. denied) (State's voluntary abandonment of attempts to collect the complained-of penalty did not render the controversy moot nor deprive the trial court of jurisdiction).

Unlike *Matthews*, in the present case, First Amendment rights are not implicated and the complaining party (KCS) is not asserting that the proposed charter amendment would violate the Texas or Federal Constitution. Additionally, this case does not involve a voluntary cessation of challenged conduct by the Defendants, and  the complaining party here (KCS) is a specific purpose political action committee formed solely to oppose the charter amendment set for the May 2014 election and there is a constitutional limitation on how often the City can place a charter amendment on the ballot. *See* Tex. Const. art. XI, § 5(a). The election deadline had already passed at the time of trial, and by law no additional

charter amendment could have been submitted for two years. *See id.* And, KCS as a specific purpose committee failed to demonstrate how there is a reasonable expectation that it will be subjected to the same action again. *See*, *Trulock*, 277 S.W.3d at 929. Therefore, we conclude that an exception to the mootness doctrine does not apply and the trial court erred in concluding that the matter was not moot.

Additionally, even assuming that the matter in the case at bar was not moot, we further conclude that the matter failed to present a justiciable question that was ripe for review by the trial court. "It is well settled that separation of powers and the judiciary's deference to the legislative branch require that judicial power not be invoked to interfere with the elective process." *Blum*, 997 S.W.2d at 263. We reject KCS's argument that because it is challenging the existence of the initiative power and not the substance of the election measure the separation of powers doctrine does not apply and the trial court had subject matter jurisdiction.

The trial court lacked subject matter jurisdiction to issue a permanent injunction that enjoined the City from "conducting an election on the Petition pursuant to the First Ordinance or Proposition 4 of the Second Ordinance." *See Blum*, 997 S.W.2d at 263-64 (a party had no right to enjoin a scheduled election, but could seek to enjoin the City from using misleading language on a ballot when it could be judicially resolved in time for the election); *Coalson*, 610 S.W.2d at 747

32

(a pre-election declaratory judgment was prematurely filed and the election results determine whether there is a justiciable issue); *Couchman*, 249 S.W. at 239; *HP Pinnell*, 207 S.W.3d at 419. Being lawfully clothed with legislative power, the City should be allowed to exercise that power and to the dictates of its legislative judgment, regardless of whether or not any particular enactment may be valid or invalid. *Couchman*, 249 S.W. at 240.

Additionally, the trial court lacked subject matter jurisdiction over KCS's request for declaratory relief. A court should not "declare rights on facts which have not arisen or adjudicate matters which are contingent, uncertain, or rest in the future." *Brinkley v. Tex. Lottery Comm'n*, 986 S.W.2d 764, 768 (Tex. App.— Austin 1999, no pet.) (citing 26 C.J.S. *Declaratory Judgments*, § 28 (1956)). The declaratory judgment act does not enlarge a trial court's jurisdiction but is "'merely a procedural device for deciding cases already within a court's jurisdiction.'" *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011) (quoting *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)).

We sustain Appellants' issue on appeal, dissolve the permanent injunction, reverse the judgment of the trial court, and we dismiss the case. *See City of Garland v. Louton*, 691 S.W.2d 603, 605 (Tex. 1985).[8]

REVERSED AND DISMISSED.

_____
LEANNE JOHNSON
Justice

Submitted on September 24, 2015
Opinion Delivered July 28, 2016

Before McKeithen, C.J., Kreger and Johnson, JJ.

---

[8] Were we to address the merits of the claim, we also note that KCS failed to establish and the findings of the trial court fail to identify an independent wrongful act, injury, exigent circumstance, or harm to KCS that would be sufficient to show irreparable harm which is a necessary element for a permanent injunction. The mere physical or theoretical possibility that the complaining party may be subjected to the same action again is not sufficient to establish irreparable harm. *See HP Pinnell*, 207 S.W.3d at 419. As a matter of law, the mere passage of an ordinance does not by itself establish irreparable harm. *Id*. Although, KCS alleged in its pleadings in the Lawsuit that it would be "irreparably harmed" should the ordinance be placed on the ballot, there appears to be no evidence in the record from the trial regarding the alleged irreparable harm.